**United States Court of Appeals**
**Fifth Circuit**
**F I L E D**
**July 1, 2005**
Charles R. Fulbruge III
Clerk

IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

)))))))))))))))))))))))))))

No. 04-50200

)))))))))))))))))))))))))))

DANIEL PEREZ,

Plaintiff-Appellant,

v.

JO ANNE B. BARNHART, COMMISSIONER OF SOCIAL SECURITY,

Defendant-Appellee.

---

Appeal from the United States District Court
for the Western District of Texas

---

Before REAVLEY, DeMOSS, and PRADO, Circuit Judges.

EDWARD C. PRADO, Circuit Judge:

Daniel Perez challenges his denial of social security disability benefits. Because the Commissioner's decision is supported by substantial evidence, we affirm the judgment of the district court.

I. Background

Plaintiff-Appellant Daniel Perez injured his knee while working as a painter in May 1990. He began receiving treatment for his injury immediately. Between 1990 and 1997, Perez saw at least seven doctors for a variety of conditions, including degenerative disc disease of the spine, degenerative arthritis of

1

the knee, neck pain, back pain, buttock pain, obesity, and diabetes.

Perez filed a disability insurance benefits ("DIB") application in June 1997, alleging disability since May 1990 due to diabetes, left leg pain, and osteoarthritis.[1]  The Commissioner contends, and Perez does not dispute, that the relevant time frame for consideration of Perez's status is May 31, 1990, the date that Perez was injured on the job, to December 31, 1995, the date that Perez last met the insured status requirements of the Social Security Act.[2]  The Commissioner denied Perez's application.

The ALJ held a hearing on Perez's application and determined that Perez was not disabled.  In addition to considering the objective medical evidence in the record, the ALJ heard testimony from Perez, a medical expert, and a vocational expert ("VE").

First, the ALJ found that the objective medical evidence supported a finding of no disability.  Although the record contained a letter from one of Perez's treating physicians, Dr. Sullivan, stating that Perez was unable to work, this evidence was contradicted by Dr. Sullivan himself as well as other

---

[1] The June 1997 DIB application was Perez's second.  Perez first applied for DIB in 1993.  His application was denied, and his appeal was dismissed as untimely.

[2] 42 U.S.C. § 401 *et seq.* (2003); *see also* 20 C.F.R. § 404.320 (listing "insured for disability" among those requirements to be met before one is entitled to benefits).

2

evidence in Perez's medical records.  Specifically, a year before Dr. Sullivan issued the letter stating that Perez was unable to work, he released Perez to sedentary work.[3]  Moreover, Dr. Sullivan had not performed any X-Rays, MRIs, CT scans, or other medical tests on Perez.  In addition, Perez had never used a cane or other device to help him walk, nor had he ever gone to physical therapy, performed strengthening exercises at home, or used a TENS unit to relieve pain.

Second, the ALJ found that Perez's testimony regarding the severity of his pain was not fully credible and thus did not support a finding of disability.  Perez testified that he graduated from high school but was in special education from sixth to tenth grade and was in a work program from eleventh through twelfth grade.  He also testified to the following: he received Cortisone injections every four weeks, which did not relieve his pain, and took Vicodin three times a day, which helped some; he did not have enough money to pay for his diabetes medication; he walked for exercise when able, but his feet had been too swollen to exercise during the four months prior to the hearing; he was forgetful; and his back and knee pain prevented him from working.

---

[3] Sedentary work involves "lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools."  20 C.F.R. § 404.1567(a) (2005).

The ALJ noted that the issue to be decided was not whether Perez experienced pain, but rather "the degree of incapacity incurred because of it." And although Perez complained of severe pain, the medical and other evidence contradicted Perez's testimony. As a result, the ALJ "[did] not find [Perez's] statements regarding severe limitations in his activities of daily living or his inability to perform any work activity to be credible."

Third, the ALJ found the testimony of the medical expert and the VE to be credible. The medical expert, a board certified surgeon, reviewed Perez's medical records and concluded that from May 1990 to June 1991, Perez was capable of less than sedentary work, but was capable of sedentary work thereafter.

Additionally, the ALJ asked the VE about the work prospects of a hypothetical person with Perez's age, education, past work history, and work skills and who is limited to sedentary work. The VE testified that there is a significant number of jobs in the national economy that such a person could perform, specifically, assembler of small parts (7,000 jobs in the state and 70,000 nationally), parking lot cashier (2,500 jobs in the state and 25,000 nationally), surveillance system monitor (2,700 jobs in the state and 27,000 nationally), and envelope addresser and stuffer (2,800 jobs in the state and 30,000 nationally).

Taking into account the medical evidence as well as the testimony of Perez, the medical expert, and the VE, the ALJ found

4

that Perez had the residual functional capacity ("RFC") to perform sedentary work. As such, he was not disabled within the meaning of the Act prior to December 31, 1995, the date on which he last met the insured status requirements.

Perez appealed to the Appeals Council, which concluded that no basis existed for review of the ALJ's decision. The ALJ's decision therefore became the final decision of the Commissioner of the Social Security Administration. *See Masterson v. Barnhart*, 309 F.3d 267, 271 (5th Cir. 2002). Having exhausted his administrative remedies, Perez filed suit in the U.S. District Court for the Western District of Texas. The case was referred to a U.S. magistrate judge, who issued a Report and Recommendation that Perez's claims be denied. The district court accepted the magistrate judge's recommendation and affirmed the administrative decision denying Perez's application for benefits. Perez timely appealed to this court.

## II. <u>Standard of Review</u>

Our review of the Commissioner's decision is limited to two inquiries: (1) whether the decision is supported by substantial evidence on the record as a whole, and (2) whether the Commissioner applied the proper legal standard. *Greenspan v. Shalala*, 38 F.3d 232, 236 (5th Cir. 1994). "Substantial evidence is 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Id.* It is "more than a mere

scintilla and less than a preponderance." *Masterson*, 309 F.3d at 272 (quoting *Newton v. Apfel*, 209 F.3d 448, 452 (5th Cir. 2000)). In applying the substantial evidence standard, the court scrutinizes the record to determine whether such evidence is present, but may not reweigh the evidence or substitute its judgment for the Commissioner's. *Greenspan*, 38 F.3d at 236; *Masterson*, 309 F.3d at 272. Conflicts of evidence are for the Commissioner, not the courts, to resolve. *Masterson*, 309 F.3d at 272. If the Commissioner's fact findings are supported by substantial evidence, they are conclusive. *Richardson v. Perales*, 402 U.S. 389, 390 (1971).

III. <u>Discussion</u>

A claimant bears the burden of proving that he or she suffers from a disability, defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." *Newton*, 209 F.3d at 452 (quoting 42 U.S.C. § 423(d)(1)(A) (2003)). "Substantial gainful activity is defined as work activity involving significant physical or mental abilities for pay or profit." *Id.* at 452–53 (citing 20 C.F.R. § 404.1572(a)–(b)). The ALJ uses a five-step sequential analysis to evaluate claims of disability: (1) whether the claimant is currently engaged in

6

substantial gainful activity (whether the claimant is working); (2) whether the claimant has a severe impairment; (3) whether the claimant's impairment meets or equals the severity of an impairment listed in 20 C.F.R., Part 404, Subpart B, Appendix 1; (4) whether the impairment prevents the claimant from doing past relevant work (whether the claimant can return to his old job); and (5) whether the impairment prevents the claimant from doing any other work. *Masterson*, 309 F.3d at 271–72; *Newton*, 209 F.3d at 453 (both citing 20 C.F.R. § 404.1520). The claimant bears the burden of proof on the first four steps, and then the burden shifts to the Commissioner on the fifth step to show that the claimant can perform other substantial work in the national economy. *Masterson*, 309 F.3d at 272; *Newton*, 209 F.3d at 453. "Once the Commissioner makes this showing, the burden shifts back to the claimant to rebut this finding." *Newton*, 209 F.3d at 453.

If the Commissioner can determine whether the claimant is disabled at any step, that ends the analysis. 20 C.F.R. § 404.1520(a). If the Commissioner cannot make a determination, he goes on to the next step. *Id.* Before going from step three to step four, the Commissioner assesses the claimant's RFC. *Id.* The claimant's RFC assessment is a determination of the most the claimant can still do despite his physical and mental limitations and is based on all relevant evidence in the claimant's record. 20 C.F.R. § 404.1545(a)(1). The claimant's RFC is used at both

7

steps four and five of the sequential analysis: at the fourth step to determine if the claimant can still do his past relevant work, and at the fifth step to determine whether the claimant can adjust to any other type of work. 20 C.F.R. § 404.1520(e).

Here, the ALJ found that Perez was not disabled at step five of the sequential analysis, where the Commissioner has the burden to show that the claimant is not disabled, *Wren v. Sullivan*, 925 F.2d 123, 125 (5th Cir. 1991). In determining whether substantial evidence of disability exists, this court weighs four factors: (1) objective medical evidence; (2) diagnoses and opinions; (3) the claimant's subjective evidence of pain and disability; and (4) the claimant's age, education, and work history. *Id.* at 126. On appeal, Perez challenges three aspects of the ALJ's step-five determination that he was not disabled:[4] First, Perez argues that substantial evidence does not support the ALJ's finding that Perez possesses a high school education. Second, Perez argues that substantial evidence does not support the ALJ's RFC assessment. Third, he argues that the ALJ was required under Fifth Circuit caselaw to make a specific finding

---

[4] Because Perez's brief is poorly organized, it is unclear whether he is also arguing that the ALJ erred in determining that Perez's impairments did not impose "an additional and significant work-related limitation of function" such that he should be deemed automatically disabled under step three of the sequential analysis. *See* 20 C.F.R. pt. 404, subpt. P, App. 1 (1993) (Listing 12.05C). To the extent that Perez attempted to advance that argument, it is waived due to inadequate briefing. *See* FED. R. APP. P. 28(a)(9)(A).

8

that Perez could not only obtain, but also maintain, employment. None of these arguments has merit.

A. <u>Education</u>

First, Perez argues that substantial evidence does not support the ALJ's finding that he possesses a high school education. The regulations define education as "formal schooling or other training which contributes to [one's] ability to meet vocational requirements, for example, reasoning ability, communication skills, and arithmetical ability." 20 C.F.R. § 15.64(a). The Social Security Administration uses six categories to evaluate an applicant's educational level: (1) illiteracy, (2) marginal education, (3) limited education, (4) high school education and above, (5) inability to communicate in English, and (6) other. *Id.* § 404.1564 (b)(1)-(6). In this case, the ALJ found that Perez falls into the fourth category—high school education and above. In making that determination, the ALJ relied on Perez's own testimony that he graduated from high school in 1978. San Marcos Independent School District records confirm Perez's testimony.

Perez argues that the ALJ erred in finding that he possesses a "[h]igh school education or above" under 20 C.F.R. § 404.1564(b)(4) instead of "[m]arginal education" or "[l]imited education." Although Perez received a high school diploma, he was not enrolled in traditional high school classes. Rather, he

9

was found to have a "slow learning disability" that necessitated his enrollment in special education classes through the tenth grade. Throughout his eleventh and twelfth grade years, Perez did not take academic courses but rather received credit through a work program in which he worked as a painter. Perez claims that he has difficulty spelling and cannot even fill out a job application. Thus, he argues, the ALJ should not have relied on his testimony that he graduated from high school, as well as the school records that confirm his graduation, and should have instead found that Perez possesses some level of education lower than "[h]igh school education or above." If the ALJ had done so, Perez contends, the VE would have evaluated the hypothetical employment prospects of someone in a lesser educational category.

The ALJ's finding that Perez has a high school education is supported by substantial evidence: Perez's testimony and school records.[5] Yet even if Perez should have been found to possess a marginal or limited education, his education is just one of several factors that this court must weigh in determining whether substantial evidence supports the ALJ's finding that Perez was

---

[5] *See Johnson v. Barnhart*, 312 F. Supp. 2d 415, 428 (W.D. N.Y. 2003). There, the plaintiff disputed the ALJ's finding that he was a high school graduate because he attended special education classes. *Id.* The district court rejected his argument, stating that "[t]o the extent that evidence in the record supports plaintiff's contention that his reading ability is limited, the Court does not find that this undermines the ALJ's determination that plaintiff is also a high school graduate." *Id.*

not disabled prior to December 31, 1995.   20 C.F.R. § 404.1520(a)(4)(v) (RFC, age, education, and work experience); *Wren*, 925 F.2d at 126 (objective medical facts; diagnoses and opinions; subjective evidence of pain; education, age, and work history).  Perez does not allege that he would have been deemed disabled but for the ALJ's finding that he has a high school education.  Nor does Perez allege that a finding of marginal or limited education would prevent him from performing the sedentary jobs that the VE testified a hypothetical person with Perez's characteristics could perform——e.g., small parts assembler, parking lot cashier, or surveillance system monitor.  In fact, Perez's counsel failed to ask the VE a single question, much less present the expert with his own hypothetical question concerning a claimant in a lower educational category.

Rather, Perez simply argues that substantial evidence does not support the ALJ's educational finding because he completed high school through special education classes and a work program. One federal district court recently rejected a similar argument in *Lipson v. Barnhart*, 347 F. Supp. 2d 1182 (M.D. Ala. 2004). There, Lipson argued that the Commissioner's decision denying her disability benefits should be reversed because the ALJ's finding that she had a tenth grade education was not supported by substantial evidence. *Id.* at 1186.  Specifically, Lipson argued that the ALJ had "erroneously determined Lipson's level of

education by accepting Lipson's testimony as to what grade she completed." *Id.* Other evidence showed that Lipson had taken special education classes since the sixth grade. *Id.* Standardized tests administered by a doctor "revealed that Lipson had borderline intellectual functioning." *Id.* Although Lipson had acknowledged that she could read, the tests showed that she was illiterate and reading at less than a third grade level. *Id.* "Thus, although Lipson testified that she had a tenth grade education, her actual level of education attained was significantly lower." *Id.*

Nevertheless, the district court held that substantial evidence supported the ALJ's finding that Lipson had a tenth grade education. *Id.* at 1187. Critical to the court's decision was the fact that "[the doctor's] assessment made no findings regarding [the impact of Lipson's reading skills and intellectual functioning upon her ability to perform vocational tasks]." *Id.* at 1187-88. Lipson argued that "the ALJ should have assumed that her diminished intellectual functioning rendered her unable to perform the jobs listed by the VE, including assembler, sorter, and facilities attendant." *Id.* at 1187. However, the district court held that despite the evidence of Lipson's low reading level, "in the absence of evidence of [impact], the court cannot conclude that the ALJ's determination was unsupported by the

12

record."[6]  *Id.* at 1187–88.

Here, the ALJ determined that Perez possesses a high school education based on his own testimony and San Marcos Independent School District records.  Perez now makes the same argument that the plaintiff in *Lipson* made: the ALJ should not have based its educational assessment on Perez's own testimony but should have looked to other evidence that points to a lower educational level.  Yet despite his educational limitations, Perez worked as a painter and oil field worker before the onset of disability.  Perez has not provided any impact evidence; that is, he has not shown how his less-than-high-school education affects his ability to perform the jobs suggested by the VE, or how these jobs require more intellectual ability than did his past relevant work as a painter and oil field worker.

In light of the highly deferential standard of review and

---

[6] Similarly, in *Hatcher v. Apfel*, the district court rejected the plaintiff's "argu[ment] for reversal on the grounds that the ALJ incorrectly determined that the plaintiff had a '"high school" education obtained through special education.'" 167 F. Supp. 2d 1231, 1238 (D. Kan. 2001).  Finding that there was substantial evidence that the plaintiff had at least a "marginal education," the court agreed with the Commissioner's position that even if the plaintiff did not have a high school education, he was still not disabled.  *Id.*  The regulations command a finding of not disabled for illiterate or marginally educated claimants whose RFC still permits them to do light or sedentary work.  *Id.* (citing 20 C.F.R. Part 404, Subpart P, Appendix 2, §§ 201.18, 202.16–.17).  Therefore, even if the ALJ had made a mistake in categorizing the plaintiff's level of education, there was still substantial evidence to support the ALJ's conclusion that the plaintiff was not disabled.  *Id.*

13

Perez's failure to develop his argument or support it by citing to any relevant authority, Perez's assertion that his special-education and work-program evidence entitles him to summary judgment or remand is not persuasive. The ALJ's finding that Perez has a high school education is supported by substantial evidence.

B. Determination of RFC

Perez also argues that the ALJ's RFC determination is not supported by substantial evidence. We disagree.

The VE testified that there were numerous jobs in the national economy that Perez could perform, but Perez's attorney neither cross-examined the VE nor provided any contrary evidence. We have held that where the claimant offers no evidence contrary to the VE's testimony, the claimant fails to meet his burden of proof under the fifth step of the disability analysis.[7] Accordingly, substantial evidence supports the ALJ's determination that Perez was capable of sedentary work prior to December 31, 1995.

C. Maintaining Employment

---

[7] See Masterson v. Barnhart, 309 F.3d 267, 273 (5th Cir. 2002) ("Masterson offered no contrary evidence and thus did not satisfy his burden to prove that he could not perform the kinds of jobs identified by [the VE]."); Vaughan v. Shalala, 58 F.3d 129, 132 (5th Cir. 1995) ("Since Vaughan offered no evidence that she was incapable of performing the types of work that the ALJ determined were available and that she was capable of performing, Vaughan failed to meet her burden of proof under the disability test.").

14

Finally, Perez argues that under the Fifth Circuit's decision in *Watson v. Barnhart*, 288 F.3d 212 (5th Cir. 2002), the ALJ was required to find not only that the claimant's ailments do not prevent him from obtaining employment, but also that the claimant will be able to maintain employment. The Commissioner takes the position that *Watson*'s conclusion has been undermined by the more recent Fifth Circuit case of *Frank v. Barnhart*, 326 F.3d 618 (5th Cir. 2003). We agree with the Commissioner.

This court made clear in *Frank* that "nothing in *Watson* suggests that the ALJ must make a specific finding regarding the claimant's ability to maintain employment in every case." *Id.* Rather, "*Watson* requires a situation in which, by its nature, the claimant's physical ailment waxes and wanes in its manifestation of disabling symptoms." *Id.* Without such a showing, the claimant's ability to maintain employment is subsumed in the RFC determination. *See id.* Perez has not made the requisite showing.

The *Frank* court gave an example of evidence that might necessitate a separate finding of a claimant's ability to maintain employment: "For example, if Frank had alleged that her degenerative disc disease prevented her from maintaining employment because every number of weeks she lost movement in her legs, this would be relevant to the disability determination." *Id.* The evidence urged upon the court by Perez does not rise to

this level of impairment.

First, Perez points to his 1995 testimony that he has "good days and bad days."[8]  As the Commissioner correctly points out, Perez's testimony, if credible, "simply do[es] not rise to the level of impairment anticipated by the Court in *Frank*."  *Cf. Dix v. Sullivan*, 900 F.2d 135, 136 (8th Cir. 1990) (describing the intermittently recurring symptoms of the claimant who was suffering from Crohn's disease); *Singletary*, 798 F.2d at 821 ("The nature of the mental impairment is such . . . that the claimant is unable to remain employed for any significant period of time.").

Second, Perez states that in 1992 he was being given epidural injections for his pain and "[b]ecause the injections [were] given over time, the pain would vary in intensity or 'wax and wane' between injections."  Such an assertion is simply not sufficient to bring Perez's case within the realm of disablement envisioned by the *Frank* court.  It is axiomatic that the pain from any type of ailment will vary in intensity, especially the

---

[8] After Perez's first application was denied by the Social Security Administration, Perez requested an administrative hearing before an ALJ, which was held in May 1995.  The ALJ denied Perez's application for benefits.  His appeal was dismissed as untimely.  In 1997, Perez filed his second DIB application, which is currently before this court.

farther one gets from treatment that alleviates pain.[9]  Moreover,
Dr. Heinze, who administered the injections, reported that the
injections were effective.

Third, Perez points to testimony by Dr. Heinze in December
1999 that Perez had been unable to work for the previous five
years.  The Commissioner points out that Dr. Heinze never
conducted any form of clinical examination on Perez, for example,
an MRI, X-ray, blood test, or CT scan.  "[O]rdinarily, the
opinions, diagnoses, and medical evidence of a treating physician
who is familiar with the claimant's injuries, treatments, and
responses should be accorded considerable weight in determining
disability."  *Greenspan v. Shalala*, 38 F.3d 232, 237 (5th Cir.
1994) (quoting *Scott v. Heckler*, 770 F.2d 482, 485 (5th Cir.
1985)).  But the treating physician's opinions are not
conclusive.  *Id.*  "[W]hen good cause is shown, less weight,
little weight, or even no weight may be given to the physician's
testimony."  *Id.*  Recognized "good cause" exceptions include
"disregarding statements that are brief and conclusory, *not
supported by medically acceptable clinical laboratory diagnostic
techniques*, or otherwise unsupported by the evidence."  *Id.*

---

[9] *See* Epidural Steroid Injections, *at* http://www.spine-
health.com/topics/conserv/epidural/feature/ep01.html (last
visited June 30, 2005) ("An epidural injection is typically used
to alleviate chronic low back and/or leg pain. . . . [I]t can
provide sufficient pain relief to allow the patient to progress
with their rehabilitation program.").

17

(citing *Scott*, 770 F.2d at 485) (emphasis added). The ALJ was therefore justified in giving little weight to Dr. Heinze's testimony because he did not perform any clinical examinations on Perez.

Finally, Perez points to the 1999 testimony by his expert witness, an environmental safety and health manager, that "he knew Mr. Perez and it was his professional opinion that Mr. Perez would not be able to work a 30 hour week 'on a reliable basis.'" This evidence does not come close to meeting the standard required by *Frank*. Perez has not offered any evidence that his condition "waxes and wanes" in intensity such that his ability to maintain employment was not adequately taken into account in his RFC determination. In short, Perez's *Watson* argument is wholly without merit. It is rejected.

IV. <u>Conclusion</u>

For the foregoing reasons, the judgment of the district court is affirmed.

AFFIRMED.