United States Court of Appeals
Fifth Circuit

**F I L E D**

**April 17, 2006**

**Charles R. Fulbruge III**
Clerk

IN THE UNITED STATES COURT OF APPEALS

FOR THE FIFTH CIRCUIT

_____

No. 05-51219
Summary Calendar

_____

BEVERLY HARPER,

Plaintiff-Appellant,

versus

JO ANNE B. BARNHART,
Commissioner of Social Security

Defendant-Appellee.

_____

Appeal from the United States District Court
for the Western District of Texas
USDC No. 1:04-CV-378

_____

Before SMITH, GARZA, AND PRADO, Circuit Judges.

PER CURIAM:[*]

Plaintiff-Appellant Beverly Harper challenges the district court's order affirming the Commissioner of Social Security's ("Commissioner") decision to deny her claim for Social Security disability benefits. Because the Commissioner's decision is supported by substantial evidence and comports with the relevant legal standards, we AFFIRM the judgment of the district court.

---

[*] Pursuant to 5TH CIR. R. 47.5, the Court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

I.   BACKGROUND

On February 1, 2000, Plaintiff-Appellant applied for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") payments under the Social Security Act[1] ("the Act").  She claimed that her heart condition, hypothyroidism, goiter, depression, and cardiac neurosis rendered her disabled.  The Commissioner denied Plaintiff-Appellant's application on March 17, 2000.  On May 1, 2000, the Commissioner denied Plaintiff-Appellant's request for reconsideration.

Plaintiff-Appellant then requested a hearing before an Administrative Law Judge ("ALJ").  At the time of the hearing, Plaintiff-Appellant was forty years old, and had a high school education, which she completed by attending special education classes.  Plaintiff-Appellant testified that while she can both read and write, she is better at writing.  She also testified that her last permanent job was as a home health care attendant, and that she has also worked as a hotel maid.  Plaintiff-Appellant stated that she stopped working following open heart surgery.  At the hearing, she also complained of chest pain, back pain, pain on her side, crying spells, and problems sleeping.  In addition, Plaintiff-Appellant explained that she fears dying in her sleep and that she incessantly worries about whether she has locked her doors.

_____

[1] Plaintiff-Appellant's claims depend on sections 223 and 1614(a)(3)(A) of the Act.  Section 223 is codified at 42 U.S.C. § 423.  Section 1614(a)(3)(A) is codified at 42 U.S.C. § 1382.

Plaintiff-Appellant testified that she lives with her mother. Although she primarily spends her days watching television and sleeping, she also does some cooking and cleaning, and accompanies her mother to the grocery store.

Dr. James Armstrong, a board certified general surgeon, also testified at the hearing. He explained that Plaintiff-Appellant's primary impairment was her heart condition. However, Dr. Armstrong testified that Plaintiff-Appellant's heart condition did not impose any severe limitations. He opined that Plaintiff-Appellant could still perform light work that entailed lifting twenty pounds occasionally and 10 pounds frequently, standing for six hours in an eight-hour workday, and unlimited bending and stooping. Dr. Armstrong also stated that Plaintiff-Appellant's goiter was not limiting in any way. With regard to depression, Dr. Armstrong testified that the condition was noted only a few times in the medical record, and when mentioned, there was no elaboration.

Vocational expert Billy Brown also testified at the hearing. He asserted that an individual of Plaintiff-Appellant's age and education could perform the following jobs: companion domestic service, nursery school attendant, light office cleaner, and food preparation worker. He also stated that all of these jobs (which range from light and unskilled to light and semiskilled) existed in significant numbers in the national and local economy.

At the conclusion of the hearing, Plaintiff-Appellant's counsel requested a psychological evaluation with testing to determine

Plaintiff-Appellant's intelligence quotient ("IQ"). After questioning Brown, however, the ALJ did not order the evaluation. Brown testified that all of the jobs that Plaintiff-Appellant could perform required an IQ above 70. Additionally, he stated that the semiskilled jobs he suggested were comparable to positions Plaintiff-Appellant held in the past and that none of the unskilled positions he mentioned required IQs higher than that required by Plaintiff-Appellant's previous jobs.

After hearing testimony and reviewing the medical record evidence, the ALJ denied Plaintiff-Appellant's application, finding that Plaintiff-Appellant was not disabled within the meaning of the Act. The ALJ wrote that although Plaintiff-Appellant had severe impairments due to pace maker placement, atrial defect repair, and hypothyroidism, these impairments were not significant enough to equal one of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. The ALJ also discredited Plaintiff-Appellant's allegations concerning the extent of her limitations. Finally, while finding that Plaintiff-Appellant could not perform her past relevant work, the ALJ held that she could perform a full range of light work. Plaintiff-Appellant appealed to the Appeals Council, which concluded that no basis existed for review of the ALJ's decision.

On June 28, 2004, Plaintiff-Appellant filed a complaint in the district court, seeking review of the Commissioner's denial of DIB

and SSI payments.[2]  On July 25, 2005, the magistrate judge entered judgment in favor of the Commissioner.  This appeal followed.

II.  STANDARD OF REVIEW

Our review of the Commissioner's denial of SSI benefits is restricted to considering whether the decision is supported by substantial evidence in the record and whether the proper legal standards were applied.  *See Villa v. Sullivan*, 895 F.2d 1019, 1022 (5th Cir. 1990).  "Substantial evidence is more than a scintilla, less than a preponderance, and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Hames v. Heckler*, 707 F.2d 162, 164 (5th Cir. 1983).  In applying this standard, while we must review the entire record to determine if such evidence is present, "we may neither reweigh the evidence in the record nor substitute our judgment for the Secretary's." *Villa v. Sullivan*, 895 F.2d 1019, 1022 (quoting *Hollis v. Bowen*, 837 F.2d 1378, 1383 (5th Cir. 1988))(citations omitted).

III. DISCUSSION

The Commissioner uses a sequential five-step inquiry[3] to

---

[2] The case was referred to a magistrate judge for resolution upon consent of the parties pursuant to 28 U.S.C. § 636 (c), Federal Rule of Civil Procedure 73, and Rule 1(i) of Appendix C of the Local Rules of the United States District Court for the Western District of Texas.

[3] The five-step analysis requires the Commissioner to consider:  1) whether the claimant is presently engaging in substantial gainful activity, 2) whether the claimant has a severe impairment, 3) whether the impairment is listed, or equivalent to an impairment listed in appendix I of the

evaluate disability claims under 42 U.S.C. § 423(d)(1)(A).[4] *Perez v. Barnhart*, 415 F.3d 457, 461 (5th Cir. 2005). The ALJ found that Plaintiff-Appellant was not disabled because her impairments did not prevent her from performing substantial gainful activity. On appeal, Plaintiff-Appellant challenges three aspects of the ALJ's decision. First, she argues that the ALJ erred by not ordering a psychological evaluation that was requested based on evidence of mental impairment. Next, Plaintiff-Appellant contends that the ALJ's finding that she could perform a full range of light work is not supported by substantial evidence. Finally, Plaintiff-Appellant asserts that the Commissioner employed incorrect legal standards in determining her RFC, weighing the evidence supplied by her treating

---

regulation, 4) whether the impairment prevents the claimant from doing past relevant work, and 5) whether the impairment prevents the claimant from performing any other substantial gainful activity. 20 C.F.R. § 404.1520. *Perez v. Barnhart*, 415 F.3d 457, 461 (5th Cir. 2005). The claimant bears the burden of proof on the first four steps of the inquiry. *Id.* Then, the burden shifts to the Commissioner on the final step to demonstrate that the impairment does not prevent the claimant from performing other work. *Id.* "Once the Commissioner makes this showing, the burden shifts back to the claimant to rebut this finding." *Id.* (quoting *Newton v. Apfel*, 209 F.3d 448, 453 (5th Cir. 2000)).

[4] "Disability" is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months. *Newton v. Apfel*, 209 F.3d 448, 452 (5th Cir. 2000)(quoting 42 U.S.C. § 423(d)(1)(A)).

6

physician, and assessing her own credibility.[5]  We will consider

each claim in turn.

**A.  *The ALJ was not required to order a consultative examination.***

Plaintiff-Appellant alleges that because there was sufficient

evidence of mental impairment, the ALJ wrongfully refused to order

a consultative psychological evaluation at the government's expense.

"The ALJ owes a duty to a claimant to develop the record fully

and fairly to ensure that his decision is an informed decision based

on sufficient facts." *Brock v. Chater*, 84 F.3d 726, 728 (5th Cir.

1996).  This Court will find that the ALJ's decision was not

supported by substantial evidence if the claimant demonstrates "(1)

that the ALJ failed to fulfill his duty to adequately develop the

record, and (2) that the claimant was prejudiced thereby." *Id.*  A

consultative evaluation, however, is only required "when the

claimant presents evidence sufficient to raise a suspicion

concerning a non-exertional impairment." *Id.*  The decision to order

a consultative examination is within the ALJ's bailiwick. *Anderson*

_____

[5] Before moving from the third step to step four of the five-step inquiry, the Commissioner assesses the claimant's residual functional capacity ("RFC") to determine the most the claimant can still do notwithstanding his physical and mental limitations. 20 C.F.R. § 404.1520(a). *Perez*, 415 F.3d at 461-62.  The claimant's RFC is used at both the fourth and fifth steps of the sequential analysis.  20 C.F.R. § 404.1520(a)(4). *Perez*, 415 F.3d at 462.  At step four, the claimant's RFC is utilized to determine if the claimant can still do his past relevant work. 20 C.F.R. § 404.1520(a)(4)(iv).  At the fifth step,  the claimant's RFC is used to determine whether the claimant can adjust to other types of work.  20 C.F.R. § 404.1520(a)(4)(v).

*v. Sullivan*, 887 F.2d 630, 634 (5th Cir. 1989). Isolated comments are insufficient, without further support, to raise a suspicion of non-exertional impairment. *Brock*, 84 F.3d at 728.

The evidence demonstrates that Plaintiff-Appellant's alleged intellectual limitations had not precluded her from engaging in substantial gainful activity in the past. As the district court noted, notwithstanding her allegedly low intellectual capacity, Plaintiff-Appellant previously worked as a home health care attendant, an occupation requiring both reading and writing. Therefore, assuming *arguendo* that the ALJ failed to fulfill his duty to adequately develop the record, Plaintiff-Appellant cannot demonstrate that she was prejudiced by the error.

With regard to cardiac neurosis, Plaintiff-Appellant did not list that condition in her original application for benefits and never sought treatment for it. The only reference to cardiac neurosis in the record is in the medical expert's description of its symptoms upon being questioned by Plaintiff-Appellant's attorney. Therefore, we find that Plaintiff-Appellant's allegations of cardiac neurosis are the kind of isolated comments that are insufficient to raise a suspicion of non-exertional impairment. *See*, *id.* Consequently, the ALJ was not required to order a consultative examination in order to fulfill his duty to adequately develop the

8

record.[6]

B. **The ALJ's assessment of Plaintiff-Appellant's RFC is supported by substantial evidence and comports with the relevant legal standards.**

Next, Plaintiff-Appellant contends that the ALJ's finding that she could perform a full range of light work is not supported by substantial evidence. Specifically, Plaintiff-Appellant argues that the ALJ: (1) failed to address the fact that she obtained a high school education through special education courses; (2) wrongfully rejected evidence suggesting that she was not able to work for a

---

[6] We will not address Plaintiff-Appellant's argument that the ALJ erred by discrediting her testimony concerning the extent of her limitations because it is raised for the first time on appeal. *See Greenberg v. Crossroads Sys., Inc.*, 364 F.3d 657, 669 (5th Cir. 2004)("Arguments not raised in the district court cannot be asserted for the first time on appeal.").

We also note that the district court acknowledged that Plaintiff-Appellant did not take exception to the ALJ's findings regarding depression. However, out of an abundance of caution, we will briefly address this argument because the district court discussed the ALJ's findings regarding Plaintiff-Appellant's depression. The ALJ considered Plaintiff-Appellant's depression but declined to give much weight to the condition because there was no longitudinal history of depression and Plaintiff-Appellant's physicians never referred her to a specialist. Hence, the ALJ reasoned that Plaintiff-Appellant's medical sources did not think that the problem was significant. Moreover, the ALJ noted that depression was only mentioned three times in the medical record. Given the ALJ's express consideration of the Plaintiff-Appellant's depression, the tenet that the determination of whether or not to order a consultative examination is within the ALJ's discretion, and the fact that depression was sparsely mentioned, we conclude that the ALJ was not required to order a consultative examination. Furthermore, there is no indication that Plaintiff-Appellant's depression inhibited substantial gainful activity.

year; and (3) failed to properly evaluate her mental limitations.[7] We find that the ALJ's assessment of Plaintiff-Appellant's RFC is supported by substantial evidence.

First, Plaintiff-Appellant argues that the ALJ failed to address the limitations arising from her special education. Despite her educational limitations, Plaintiff-Appellant worked as a home health care attendant and a hotel maid before the onset of disability. Plaintiff-Appellant has not provided any impact evidence; that is, she has not shown how her 'less-than-high-school' education affects her ability to perform the jobs suggested by the vocational expert, or how these jobs require more intellectual ability than did her past relevant work as a home health care attendant and a hotel maid. *See Perez v. Barnhart*, 415 F.3d at 464 (requiring appellant to demonstrate how his less-than-high-school education affected his ability to perform the jobs suggested by the vocational expert, or how those suggested jobs required more intellectual ability than did his past relevant work).

Next, Plaintiff-Appellant suggests that the ALJ erred by disregarding a January 2000, fill-in-the-blank note stating that she was disabled and unable to return to work for one year. An ALJ may ignore or give reduced weight to a physician's opinions that are brief and conclusory, not supported by medically acceptable clinical

---

[7] In light of the discussion above regarding cardiac neurosis and depression, we will not address Plaintiff-Appellant's claim regarding the ALJ's failure to properly evaluate those two mental limitations in determining her RFC.

laboratory diagnostic techniques, or otherwise unsupported by the evidence. *See id.* at 466.

Considering the ALJ's dependence on Dr. Armstrong's testimony that Plaintiff-Appellant's heart condition did not impose any severe limitations and the vocational expert's testimony regarding the jobs available to an individual of Plaintiff-Appellant's age and education, the ALJ's assessment of Plaintiff-Appellant's RFC is supported by substantial evidence.

IV. CONCLUSION

Because we conclude that the Commissioner's decision denying Plaintiff-Appellant benefits is supported by substantial evidence and comports with the relevant legal standards, we AFFIRM the district court's decision.