# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**
July 18, 2011

Lyle W. Cayce
Clerk

No. 10-31006

BONNIE GILES,

Plaintiff – Appellant

v.

MICHAEL J. ASTRUE, Commissioner of Social Security

Defendant – Appellee

Appeal from the United States District Court
for the Western District of Louisiana
USDC No. 5:09-CV-00685

Before JONES, Chief Judge, and HIGGINBOTHAM and SOUTHWICK, Circuit Judges.

PER CURIAM:[*]

For well over a decade, Plaintiff Bonnie Giles has been seeking disability insurance benefits under Title II of the Social Security Act. Giles asserts she became disabled on February 7, 1992, resulting from the onset of multiple impairments including scoliosis, temporal lobe epilepsy, headaches, Graves disease, depression, fibromyalgia, diabetes, and a later onset of cardiac disease. Giles first filed for disability benefits in 1996 and her claim has since been heard

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

No. 10-31006

by four administrative law judges ("ALJs"). All four denied benefits. The first three decisions were remanded by the Social Security Appeals Council or by the federal district court. The district court affirmed the most recent ALJ decision and Giles timely appealed. For the reasons stated below, we AFFIRM.

## I. Factual Background

Giles was born in 1950 and has a high school education. She worked for Mobil Oil in Dallas from 1977 until the alleged onset of her disability in February 1992. During her time at Mobil, she was promoted several times, eventually becoming a computer analyst, which she did for about a year until she became sick. Giles claims she was terminated for missing too much work, a problem caused by her illness. After being terminated, Giles moved to her hometown in Louisiana to be closer to family.

Although Giles states her disability began in February 1992, the medical records provide limited insight into the treatment she received before 1996, showing only that she was seen by a psychiatrist for a few months and an endocrinologist for a few years. The records also show that Giles has a 43 degree lumbar curvature, but most doctors agreed that scoliosis is the lesser of her problems. In October 1996, Giles started seeing Mairus McFarland for family practice medicine, whose regular notes are throughout the record.

Giles's medical history is complex, likely in part due to the challenges inherent in treating Graves disease, an autoimmune disorder that causes hyperthyroidism. Treatment of Graves disease may lead to hypothyroidism, which can cause depression, mental and physical sluggishness, and weight gain—conditions appearing in Giles's medical history. Giles's thyroid condition had been treated successfully with medication in September 1995, but physicians later altered her medications because of negative side effects. In April 1996, the endocrinologist noted that Giles's Graves disease was seemingly

No. 10-31006

under control, but he expressed concerns that it may be over-controlled. In February 1997, the record indicates Giles had normal thyroid function without medication, but she still relied on medication intermittently during the next several years.

Throughout Giles's illness, she has struggled with depression. Some examining physicians also suggested she be assessed for bipolar disorder. Several doctors noted that Giles was crying during examinations.

Much of Giles's physical pain during 1996 and 1997 involved her temporal lobe seizures which were likely causing severe migraine headaches. However, medical records suggest that the prescription medication Tegretol was generally effective in assisting Giles with her seizures, and Giles's complaints about the headaches were limited from 1999 to 2006.

In early 1997, Giles was admitted to the hospital and ultimately diagnosed with diabetes. Her gallbladder was removed and she started insulin therapy. There is no indication that her diabetes was an impairment until late 2004, when she was admitted to the hospital with chest pain and the emergency room physician noted that her diabetes was poorly controlled.

Despite Giles's numerous health problems, there are very few medical records from 1998 through 2005, other than regular notes from her primary care physician. In 2005, Giles's cardiac issues arose, and she was diagnosed with mitral valve prolapse and later received a pacemaker.

Giles has not been employed since 1992, and her insured status expired on December 31, 1998. Accordingly, she must establish disability on or before that date.

## II.  Procedural Background

Four ALJs have denied Giles's claim. In May 1998, ALJ Morton J. Gold denied the claim, which was later remanded for failure to consider updated

medical evidence. ALJ Thomas Bundy was the second to review the case in November 2001, and his decision was remanded because of an insufficient examination of the claimant's mental impairment and credibility. ALJ Nancy J. Griswold took the case on the next appeal in May 2004, and the district court remanded her decision because of insufficient consideration of the claimant's severe headaches and whether an underlying medical impairment could have led to Giles's alleged symptoms. Finally, ALJ Charles R. Lindsay issued a decision in August 2008, which serves as the basis for this appeal. All ALJs incorporated the previous ALJ's opinion in their decision.

ALJ Lindsay found that Giles had severe impairments of thyroid disease, depression, cardiac disease, epilepsy, diabetes, and a history of migraine headaches. He found that these conditions and others limited Giles's residual functional capacity (RFC) to the performance of light work[1] except for no more than frequent postural activities (and no climbing ladders); an inability to work at unprotected heights or around dangerous moving machinery; no more than frequent reaching, handling, and fingering; moderately reduced ability to understand, remember, and carry out detailed instructions; moderately reduced ability to maintain attention and concentration, deal with the public, and set goals independently; the need to sit and stand at will; and an inability to work in high stress situations. ALJ Lindsay concluded that these limitations did not preclude Giles from performing her past relevant work as a computer analyst and that she could also perform three alternative jobs recommended by the vocational expert: cashier II, telephone information clerk, and document preparer.

---

[1] Light work is defined as work involving "lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls." 20 C.F.R. § 404.1567(b).

No. 10-31006

The Appeals Council rejected the ALJ's conclusion that Giles could have performed her prior job. Giles only worked as a computer analyst for one year, and the vocational expert testified that two years of experience were required to acquire skills at that level. Moreover, the Appeals Council found that "[i]n light of the numerous, moderate mental limitations that are contained in the established residual functional capacity," Giles was unable to perform her past work. The Council agreed that the vocational expert's testimony provided sufficient support to conclude that Giles could perform the alternate jobs ALJ Lindsay listed, and the Council affirmed the denial of benefits. The district court affirmed, and Giles timely appealed.

## III. Applicable Laws

This court reviews the Commissioner's denial of social security benefits only to ascertain (1) whether the final decision is supported by substantial evidence and (2) whether the Commissioner used the proper legal standards to evaluate the evidence.[2] Substantial evidence is that which a reasonable mind might accept to support a conclusion.[3] "It is more than a mere scintilla and less than a preponderance."[4] When we apply the substantial evidence standard, "we scrutinize the record to determine whether such evidence is present. We may not reweigh the evidence, try the issues *de novo*, or substitute our judgment" for that of the Commissioner.[5]

---

[2] *Newton v. Apfel*, 209 F.3d 448, 452 (5th Cir. 2000).

[3] *Richardson v. Perales*, 402 U.S. 389, 401 (1971).

[4] *Ripley v. Chater*, 67 F.3d 552, 555 (5th Cir. 1995) (internal quotation marks omitted).

[5] *Greenspan v. Shalala*, 38 F.3d 232, 236 (5th Cir. 1994) (citation omitted), *cert. denied*, 514 U.S. 1120 (1995); *see Newton*, 209 F.3d at 452.

No. 10-31006

In order to be eligible for disability benefits, the claimant must prove that she has a medically determinable physical or mental impairment, or combination of impairments, lasting at least twelve months that prevents her from engaging in a substantial gainful activity.[6] Substantial gainful activity is defined as work involving significant physical or mental abilities that is usually done for pay or profit.[7] The ALJ engages in a five-step sequential evaluation process for determining whether an individual is disabled: (1) whether the claimant is presently engaging in substantial gainful activity; (2) whether the claimant has a medically determinable severe impairment, as defined by regulations; (3) whether the claimant's impairment or combination of impairments meets the criteria of an impairment listed in Appendix 1 of the regulations; (4) whether the impairment prevents the claimant from doing her past relevant work; and (5) whether the impairment prevents the claimant from doing any other work.[8]

Before considering the fourth and fifth steps, the Commissioner must determine the claimant's residual functional capacity (RFC).[9] The RFC is the individual's ability to do physical and mental tasks on a sustained basis despite limitations from her impairments. In determining the RFC, the Commissioner must consider all of a claimant's impairments, including those that are not severe.[10]

The claimant bears the burden of proof on the first four steps and then the burden shifts to the Commissioner for the fifth step. If the claimant shows she

---

[6] 42 U.S.C. § 423(d)(1)(A).

[7] 20 C.F.R. § 404.1572(a) and (b).

[8] *Id.* § 404.1520(a).

[9] *Id.* § 404.1520(e).

[10] *Id.* § 404.1545.

No. 10-31006

is no longer capable of performing her previous jobs, the Commissioner must show that the claimant is capable of engaging in some type of alternative work that exists in the national economy.[11]     Giles does not challenge the Commissioner's conclusions in the first four steps.  Rather, the sole basis for this appeal involves the RFC limitations and Giles's ability to perform alternative work.

## IV.  Discussion

### A.  Consideration of the Combined Effects of Giles's Multiple Impairments

Giles argues that the ALJ did not properly consider the combined effects of her multiple impairments.  This claim generally is without merit, as ALJ Lindsay specifically incorporated "the combination" of Giles's diabetes, cardiac disease, and migraine headaches into his RFC.  Additionally, he included limitations resulting from Giles's epilepsy and depression.  However, Giles contends that neither the ALJ nor the Appeals Council considered the effects of her scoliosis and fibromyalgia in combination with the other impairments listed.  Neither of these two conditions was listed as a severe impairment or explicitly included in the RFC.  However, the RFC included a specification allowing Giles to sit or stand at will to assist with back pain.

In challenging ALJ Lindsay's failure to list scoliosis as a severe impairment, Giles points to several physician reports that label the scoliosis as "severe."  However, a conclusion that the degree of curvature is medically "severe" differs from a finding that the ailment was "severe" for purposes of disability determination.  A non-severe impairment under the Social Security regulations is one that "does not significantly limit [the claimant's] physical or

---

[11] *Chaparro v. Bowen*, 815 F.2d 1008, 1010 (5th Cir. 1987).

mental ability to do basic work activities."[12]  The plaintiff has the burden of proving that her medical condition qualifies as severe.[13]  Giles points to no documents in the record to support her assertion that scoliosis significantly limited her physical work ability.

Further, the medical history does not support including any specific limitation in Giles's RFC because of her fibromyalgia.  Medical records from 1997 and 1998 indicate that Giles was experiencing joint pain, which may have been related to fibromyalgia.  However, after Giles received a Celestone injection in December 1998, there are no records to suggest fibromyalgia caused Giles difficulty.  Giles herself did not raise this condition in her most recent ALJ hearing.  ALJ Lindsay did not err when failing to list fibromyalgia as severe nor does the medical history support an additional RFC limitation to account for the effects of fibromyalgia.

## B.  Consideration of Treating and Examining Physicians' Opinions

Disability cases typically involve three types of physicians: 1) a treating physician who regularly provides care to the claimant; 2) an examining physician who conducts a one-time physical exam of the claimant; and 3) a reviewing or non-examining physician who has never examined the claimant, but read the claimant's files to provide guidance to an adjudicator.[14]  Because the treating physician is most familiar with the claimant's impairments, his opinion should be accorded great weight in determining disability.[15]  If a treating physician's opinion is "well-supported by medically acceptable clinical and

---

[12] 20 C.F.R. § 404.1521.

[13] *See Perez v. Barnhart*, 415 F.3d 457, 461 (5th Cir. 2005).

[14] *See generally* 20 C.F.R. § 404.1527(d).

[15] *Newton*, 209 F.3d at 455.

No. 10-31006

laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record, [the Commissioner] will give it controlling weight."[16]   Likewise, when a treating physician has reasonable knowledge of the impairment, his opinion is given more weight than an opinion from a non-treating physician.[17]   By contrast, the Commissioner may give less weight to a treating physician's opinion about a condition outside his area of expertise.[18]   Treating physicians' opinions also receive greater weight "[w]hen the treating source has seen [the claimant] a number of times and long enough to have obtained a longitudinal picture of [the claimant's] impairment."[19]   The weight given to opinions from nonexamining physicians depends on "the degree to which they provide supporting explanations for their opinions."[20]

An ALJ is free to reject a physician's opinion when good cause exists.[21] "Good cause may permit an ALJ to discount the weight of a treating physician relative to other experts where the treating physician's evidence is conclusory, is unsupported by medically acceptable clinical, laboratory, or diagnostic techniques, or is otherwise unsupported by the evidence."[22]

Social Security regulations provide that the Administration "will always give good reasons in [the] notice of determination or decision for the weight [it]

---

[16] 20 C.F.R. § 404.1527(d)(2).

[17] *Id.*

[18] *Id.*  The regulation provides the example of an ophthalmologist who notes that the patient complains of neck pain during an eye exam.  The ophthalmologist's assessment of the neck pain would be given limited weight, even though he is a treating physician, because the pain is outside his specialty.

[19] *Id.*

[20] *Id.* § 404.1527(d)(3).

[21] *Newton*, 209 F.3d at 455.

[22] *Id.* at 456.

9

No. 10-31006

give[s the claimant's] treating source's opinion."[23]   Further, Social Security Ruling 96-2p instructs that an ALJ should not reject the treating physician's opinion simply because it is not well-supported by the record.[24]   In those instances, the opinion is not given controlling weight, but the treating source opinion is "still entitled to deference and must be weighed using all of the factors provided in [the regulations]."[25]

Giles alleges that the Commissioner did not adequately weigh the opinions of treating and examining physicians and over-relied on a reviewing physician's report. ALJ Lindsay's decision included a description of interrogatory responses by a reviewing physician, neurologist Dr. Woodrow W. Janese. As noted above, this opinion may only be weighted according to the value of its supporting explanations. If ALJ Lindsay had heavily relied on Dr. Janese's testimony, such reliance would have been in error because Dr. Janese's responses to the interrogatories were conclusory and without explanations. However, ALJ Lindsay did not rely exclusively upon Dr. Janese—the medical record as a whole supports ALJ Lindsay's conclusions. Further, ALJ Lindsay's decision incorporated the preceding ALJ opinions, which together adequately address why some physician reports were given greater or lesser consideration.

i. Disability Determinations Reserved for the Commissioner

Although some determinations, such as disability and RFC, are legally reserved for the Commissioner, Social Security guidelines require adjudicators making these determinations to consider the opinions of medical sources and "apply the applicable factors" denoted in the regulations when weighing the

---

[23] 20 C.F.R. § 404.1527(d)(2).

[24] Social Security Ruling 96-2p, Titles II and XVI: Giving Controlling Weight to Treating Source Medical Opinions, 61 Fed. Reg. 34,490 (July 2, 1996).

[25] *Id.* at 34,491.

opinions.[26]  These factors are: 1) the physician's length of treatment of the claimant; 2) the frequency of examination; 3) the nature and extent of the treatment relationship; 4) the extent to which the physician's opinion is supported by the medical record; 5) the consistency of the opinion with the record as a whole; and 6) the specialization of the treating physician.[27]  With regards to a disability determination, the guidelines note that medical opinions "must not be disregarded.  However, even when offered by a treating source, they can never be entitled to controlling weight or special significance."[28]

Several physicians—Dr. McFarland, Dr. Rogers, and Dr. Russell—indicated at various points in time that they considered Giles to be disabled.  In the second administrative review of this case, ALJ Bundy specifically addressed these statements and found that they need not be attributed great weight based on the above-listed factors.  His conclusions are supported by the record as a whole.

ii. Mental Health Conditions

The district court remanded ALJ Bundy's decision back to the administration for his failure to address the severity of Giles's mental impairment.  Thus, ALJ Griswold, the third administrative reviewer, focused on Giles's mental health claims, and ALJ Lindsay incorporated Griswold's findings into his decision.  Both ALJs noted that Giles's mental health treatment had been sporadic over the years.  One mental health specialist opined that Giles was mentally impaired to the point that she was not functional at work, but ALJ Griswold adequately explained why this opinion was given limited weight.  The

---

[26] Social Security Ruling (SSR) 96–5p, Titles II and XVI: Medical Source Opinions on Issues Reserved to the Commissioner, 61 Fed. Reg. 34,471, 34,473 (July 2, 1996).

[27] 20 C.F.R. § 404.1527(d).

[28] 61 Fed. Reg. at 34,474.

physician had only treated Giles for five months and a subsequent examining physician's report found fewer impairments. More importantly, there is no evidence that Giles sought mental health treatment after November 1996.

Although Giles did not seek professional psychological help, she did follow up with her family practice physician, Dr. McFarland, who continues to prescribe anti-anxiety medication. Giles asserts that the Commissioner's decision did not properly weigh Dr. McFarland's assessment of Giles's mental limitations. However, ALJ Griswold adequately explained why she gave limited weight to Dr. McFarland's assessment. For example, Dr. McFarland said that Giles had a poor ability to maintain concentration, but his opinion was not consistent with the record as a whole; several other physicians denoted that Giles's memory and concentration were intact. Moreover, Dr. McFarland is not a mental health specialist, so his opinions regarding the claimant's mental impairments are entitled to lesser weight.[29]

To the degree Dr. McFarland's opinion was consistent with the record, the Commissioner's decision adequately takes it into consideration. For example, Dr. McFarland opined that Giles has a poor ability to deal with work stress, and the vocational expert testified that the recommended alternate jobs were appropriate for an employee who could not handle high stress job environments.

Although ALJ Lindsay concluded that Giles's mental health limitations would not impair her from performing her prior work, the Appeals Council reversed that portion of his decision. The Council's conclusion that Giles could perform the alternative jobs listed by ALJ Lindsay, even with her mental limitations, is supported by substantial evidence in the record. The Commissioner's final decision adequately considered the testimony of treating and examining physicians in determining Giles's mental health limitations.

---

[29] *See* 20 C.F.R. § 404.1527(d).

No. 10-31006

### iii. Physical Limitations

Giles further claims that ALJ Lindsay's RFC assessment failed to acknowledge the full extent of her reduced physical capacity. Specifically, Giles cites to Dr. McFarland's finding that Giles could only occasionally lift up to 10 pounds. Dr. McFarland also found that Giles's condition prohibited her from sitting for more than an hour or standing for more than an hour during an eight hour work day. ALJ Lindsay, however, concluded that Giles could sit or stand for a full eight hours as long as she had the option to alternate between the two postures at will. Giles contends that this RFC determination improperly ignored Dr. McFarland's expert opinion.

While Dr. McFarland's conclusions are relevant, they are not controlling. The record does not reflect why Giles would be limited to the degree asserted by Dr. McFarland. Moreover, even if Giles could only occasionally lift up to 10 pounds, as Dr. McFarland concluded, Giles would still be capable of performing two of ALJ Lindsay's alternative jobs—the telephone information clerk and the document preparer—both of which are sedentary positions, requiring lifting of no more than ten pounds. Likewise, Dr. McFarland limited Giles to only occasional postural maneuvers, and while ALJ Lindsay did not incorporate that into his RFC, the vocational expert testified that none of the three recommended jobs would be affected if the claimant was limited in that manner. Therefore, ALJ Lindsay adequately considered Dr. McFarland's overall diagnosis, even if the ALJ did not follow the precise guidance Dr. McFarland suggested with respect to Giles's RFC limitations.

### C. Claimant's Credibility

Giles's third claim is that ALJ Lindsay's credibility finding is not based upon substantial evidence. She asserts that ALJ Griswold's decision was remanded in part to address the credibility issue and that ALJ Lindsay failed to

No. 10-31006

follow the Appeals Council instructions. The Appeals Council had remanded so the ALJ would "consider the following factors in evaluating the intensity, persistence and limiting effects of the alleged symptoms: objective medical evidence; medical opinions; prior work record; daily activities; the location, duration, frequency and intensity of pain or other symptoms; precipitating and aggravating factors; the type, dosage, effectiveness and side effects of medication, including headaches and drowsiness; treatment other than medication and other measures used to relieve symptoms."

ALJ Lindsay noted that he was evaluating the intensity and persistence of Giles's pain based on the medical record. He summarized her full medical record and concluded that her statements were not entirely reliable. He did not discuss each factor listed by the Appeals Council, but his decision need not do so. The Social Security Ruling on credibility determinations denotes the "kinds of evidence," including the above factors, that must be considered, but there is no instruction that every factor must be discussed in detail in the determination.[30] Of course the ALJ's determination decision cannot simply make conclusory statements regarding credibility and "must contain specific reasons for the finding on credibility, supported by the evidence in the case record,"[31] but ALJ Lindsay satisfied this burden by discussing the medical record and opinions.

While the record supports Giles's assertions regarding her diagnoses, the extent of the symptoms she described in the hearing exceed what the record supports. For example, Giles testified she has severe migraine headaches two to three times a week, while the record only supports that Giles experienced

---

[30] Social Security Ruling 96-7p, Titles II and XVI: Evaluation of Symptoms in Disability Claims: Assessing the Credibility of an Individual's Statements, 61 Fed. Reg. 34,483, 34,485 (July 2, 1996); *see also Clary v. Barnhart*, 214 Fed. App'x 479 (5th Cir. 2007) ("The ALJ is *not* required to mechanically follow every guiding regulatory factor in articulating reasons for denying claims or weighing credibility.").

[31] 61 Fed. Reg. at 34,486.

intermittent headaches, which diminished in frequency with her seizure medication.  In short, there is sufficient evidence in the record to support ALJ Lindsay's determination to give the claimant limited credibility.

Finally, ALJ Lindsay did not ignore Giles's testimony entirely.  He found that Giles "has established a lengthy history of complaints of headaches, and it is reasonable to conclude that she did experience occasional headaches that, alone or in combination with her seizure disorder, depression, and other impairments, could have resulted in moderate limitations."  He included these limitations in his RFC.

## D.  Burden of Proving the Availability of Alternative Work

At step five in the disability benefits determination, the Commissioner has the burden of proof to show that there is other gainful employment the claimant is capable of performing in spite of her limitations.  Giles first argues that she is not capable of performing the cashier II or telephone information clerk jobs because she has a moderate limitation in dealing with the public.  The *Dictionary of Occupational Titles* does not explicitly state that persons with such moderate limitations are incapable of performing these jobs.[32]  Although the record suggests that Giles has some limitations in social contexts, there is an adequate basis for the ALJ to conclude that Giles could sustain some social

---

[32] *See* D.O.T. 211.462-010 Cashier II ("Receives cash from customers or employees in payment for goods or services . . . ."); D.O.T. 237.367-046 Telephone Quotation Clerk ("Answers telephone calls from customers requesting current stock quotations . . . .").  The Appellant notes that the vocational expert's citation to D.O.T. 237.367-046 was in error because the formal name is Telephone Quotation Clerk, rather than Telephone Information Clerk as stated by the vocational expert.  Appellant suggests that the vocational expert intended to refer to D.O.T. 237.367-022, the listing for information clerk.  However, the D.O.T. number originally cited by the vocational expert is the proper listing—the alternative name for Telephone Quotation Clerk is listed as "Telephone-Information Clerk," which is distinct from the regular information clerk listing.

interaction in a work environment.[33] The vocational expert testified that Giles could perform these tasks, even if she had a moderate limitation in her ability to interact with the general public and a marked limitation in dealing with detailed instructions.

To overcome the vocational expert's testimony, Giles argues that the expert did not properly understand the term "moderate." The ALJ defined moderate to mean "that there are more than slight limitations but the person can still perform the task satisfactorily."[34] The vocational expert testified that a person with moderate limitations in maintaining concentration, carrying out detailed instructions, and setting goals independently could perform Giles's past skilled work as well as the recommended unskilled alternate jobs. However, the Appeals Council disagreed and found that Giles's multiple moderate impairments prohibited her from performing her prior skilled work.

Giles asserts that the Appeals Council decision undermines the vocational expert's conclusion because, in order to reach opposing positions about Giles's capacity to perform her prior skilled work, the vocational expert must have relied on a different interpretation of multiple "moderate" impairments than the Appeals Council endorsed. Given the facts of this case, we do not find this argument persuasive. First, the Appeals Council based part of its decision on the fact that Giles had not performed her prior job as a computer analyst for long enough to retain transferable skills. Second, the vocational expert also testified

---

[33] *See Carey v. Apfel*, 230 F.3d 131, 146 (5th Cir. 2000) (finding that the ALJ may rely on the vocational expert's testimony if the record reflects an adequate basis for doing so even if the vocation expert's testimony conflicts with the DOT). Further, Giles admits that the third alternate job identified by the vocational expert, document preparer, does not require significant interaction with the general public.

[34] In an unpublished opinion, this court affirmed the use of a similar definition for "moderate," which is not defined by the regulations. *Cantrell v. McMahon*, 227 Fed. App'x 321, 322 (5th Cir. 2007) (finding the vocational expert understood the degree of limitation at issue when the ALJ defined "moderate" to mean "there are some limitations, but the person can still perform the task satisfactorily").

that a prohibition on high stress environments would prevent the claimant from performing the computer analyst position.  The ALJ's RFC denoted that Giles could not work in high-stress environments, yet he still included her past prior work in his recommendation.  The Appeals Council properly reversed this portion of his decision.  Yet this reversal does not mean that the remainder of the vocational expert's testimony was irrelevant or unpersuasive.  The vocational expert had a satisfactory understanding of the multiple moderate limitations in Giles's RFC, and both she and the Appeals Council found that Giles could adequately perform the alternate unskilled jobs, even with her multiple limitations. The Commissioner may rely upon the vocational expert's testimony to satisfy his burden of proof that the claimant is capable of performing alternate jobs in the national economy.[35]

## V.  Conclusion

"Procedural perfection in administrative proceedings is not required. This court will not vacate a judgment unless the substantial rights of a party have been affected."[36]  Giles has noted several occasions where the ALJ did not thoroughly address each aspect of the record.  Yet when dealing with such an extensive and multi-faceted record, there will always be some evidence that is not specifically discussed in the Commissioner's decision. Our review is limited to examining whether the decision to deny benefits is supported by substantial evidence in the record, and it is here.  Likewise, the Commissioner used the proper legal standards to evaluate the evidence, and the ALJ adequately resolved inconsistencies in the record.  The decision below is AFFIRMED.

---

[35] *See, e.g.*, *Carey*, 230 F.3d at 145.

[36] *Mays v. Bowen*, 837 F.2d 1362, 1364 (5th Cir. 1988) (per curiam); *see Anderson v. Sullivan*, 887 F.2d 630, 634 (5th Cir. 1989) (quoting *Mays*).