IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

August 4, 2009

Charles R. Fulbruge III
Clerk

No. 08-60901

VANESSA M QUALLS

Plaintiff - Appellant

v.

MICHAEL J ASTRUE, COMMISSIONER OF SOCIAL SECURITY

Defendant - Appellee

Appeal from the United States District Court
for the Northern District of Mississippi
USDC No. 1:05-CV-242

Before KING, HIGGINBOTHAM, and CLEMENT, Circuit Judges.

PER CURIAM:[*]

Vanessa M. Qualls appeals the district court's decision affirming the Administrative Law Judge's determination that she is not disabled and is therefore ineligible for Social Security disability benefits. For the following reasons, we affirm.

## FACTS AND PROCEEDINGS

### A.    Procedural History

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

Vanessa M. Qualls ("Qualls") filed an application for disability on July 19, 2001, alleging a disability onset date of December 15, 2000. She represented that she was no longer able to work due to Sjogren's Syndrome, headaches, arthritis, pain in her neck and lower back, and the placement of metal rods in her femur bones. Five doctors treated Qualls for varying periods of time. Two others reviewed her case on a consultative basis. This appeal centers around the different diagnostic assessments of these doctors.

Qualls's disability application was denied by the Social Security Administration's ("SSA"). She sought reconsideration and her application was again denied. Subsequently, Qualls applied for review from an Administrative Law Judge ("ALJ") who determined that she was not disabled. The Appeals Council denied her request for review. Qualls then filed suit against the Commissioner of the SSA ("Commissioner") in federal court seeking to overturn the ALJ's disability determination. Among the twelve points of error raised by Qualls—all of which were found to be without merit—the district court determined that the ALJ did not err in declining to give Qualls's treating physician's opinion controlling weight and committed harmless error in stating that surgery had eliminated a defect in her back. Qualls timely appealed, raising these two grounds of error.

## B. Medical History

While Qualls claimed a disability onset date of December 2000, her relevant medical history began prior to this date and involved seven physicians.

Prior to 2000, Dr. Dwight Johnson ("Johnson") provided treatment to Qualls. In 1988, she was involved in a car accident. Her injuries included two broken femurs which required surgery to repair and rods were installed in her legs. Qualls complained of pain from the accident, particularly in her thighs and lower back. She was in a second car accident in the 1990s. In 1994, a lesion was removed from her lip. The pathology report noted findings consistent with an

early or mild involvement with Sjogren's Syndrome. Qualls was never diagnosed with Sjogren's Syndrome and did not receive treatment for it.

Dr. Patrick Tucker ("Tucker") treated Qualls between June 2000 and November 2001. During her visits, she complained of vertigo, headache, and leg pain. Dr. Tucker prescribed muscle relaxers and pain pills, referring Qualls to Dr. Victor Gray ("Gray") for her leg pain.

Dr. Gray examined Qualls and provided care from March to November 2001. His medical notes indicate that Qualls complained of back pain. Dr. Gray performed a variety of x-rays and MRI's of Qualls's lumbar spine. He found a mild central disc protrusion and ordered epidural pain injections. Qualls continued to report back pain throughout this period but Dr. Gray found that she was resting "fine" with medication.

In August 2001, Qualls began treatment under Dr. Ken Staggs ("Staggs"). Qualls remained under his care until December 2001. During this period, Qualls reported continued back pain and Dr. Staggs ordered further epidural injections. The pain nonetheless continued. In December 2001, during her last visit with Dr. Staggs, Qualls was informed that the physician had found a posterior annular tear in her spine and suggested a lumbar support orthotic. The following month, Qualls underwent an annuloplasty to repair the annular tear. Surgery was not effective.

Under the recommendation of her attorney, in November 2001, Qualls visited Dr. Carl Welch ("Welch"). She reported leg and back pain, attributing it to the 1988 car accident. Dr. Welch completed a Medical Source Statement, a residual functionality assessment which sets forth, in the physician's opinion, the physical limitations of a Social Security benefit applicant. Dr. Welch asserted that Qualls suffered limitations incompatible with even sedentary work on a full-time basis. Qualls did not receive treatment from Dr. Welch nor did she continue under his care after this consultative visit.

Qualls began treatment under Dr. Michael Steuer ("Steuer") in August 2002. She continued to report back pain and told Dr. Steuer that she had recently suffered a fall. During her continued care under Dr. Steuer, Qualls reported significant improvement, experienced relief with medication, and had only moderate difficulty in performing daily activities. Dr. Steuer performed a nerve root block and noted substantial improvement. Nevertheless, in February 2003, Dr. Steuer completed a Medical Source Statement in which he indicated that Qualls suffered such severe physical limitations that she was unable to perform even sedentary work.[1]

In April 2003, at the ALJ's request, Qualls was evaluated by Dr. James Galyon ("Galyon") on a one-time basis. Dr. Galyon completed a Medical Source Statement in which he determined that Qualls, though hampered by physical limitations, retained the ability to perform a range of sedentary work.

## STANDARD OF REVIEW

Our review of the ALJ's disability determination "is limited to ascertaining whether (1) the final decision is supported by substantial evidence and (2) that proper legal standards were used to evaluate the evidence." *Brown v. Apfel*, 192 F.3d 492, 496 (5th Cir. 1999) (internal quotations omitted). "If the [ALJ's] findings are supported by substantial evidence, they are conclusive and must be affirmed." *Selders v. Sullivan*, 914 F.2d 614, 617 (5th Cir. 1990). "Substantial evidence is more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Consol. Edison Co. of N.Y. v. NLRB*, 305 U.S. 197, 217 (1938). "In applying the 'substantial evidence' test, we must carefully scrutinize the record to determine

---

[1] After the administrative hearing, Dr. Steuer wrote a letter indicating that the nerve blocks Qualls had previously undergone had offered her only temporary relief but no long-term benefits. He also stated that Qualls suffered from some component of disability and disk disease.

if, in fact, such evidence is present. However, we may not reweigh the evidence in the record, nor try the issues *de novo*, nor substitute our judgment for that of the [ALJ], even if the evidence preponderates against the [ALJ's] decision." *Johnson v. Bowen*, 864 F.2d 340, 343 (5th Cir. 1988). "Conflicts in the evidence are for the [ALJ] and not the courts to resolve." *Selder*, 914 F.2d at 617. Only where there is a "conspicuous absence of credible choices or no contrary medical evidence" will we find that the substantial evidence standard has not been met. *Johnson*, 864 F.2d at 343–44 (internal quotations omitted).

## DISCUSSION

### I. The ALJ's mistake

Qualls argues that the district court erred in its determination that the ALJ's error in setting forth one of her physical ailments was harmless. The ALJ stated that Qualls's annular tear had been "eliminated" when, in fact, surgery had not repaired the defect. Qualls speculates that, without this error, the ALJ may have found her testimony credible, assessed the medical evidence in a different light, and determined that her limitations were much more severe—so severe as to find her disabled. The ALJ's mistake, Qualls argues, entitles her to reversal and a new disability determination hearing.

"Procedural perfection in administrative proceedings is not required. This court will not vacate a judgment unless the substantial rights of a party have been affected." *Mays v. Bowen*, 837 F.2d 1362, 1364 (5th Cir. 1988). Where the resulting disability determination remains unchanged, even if some of the reasoning underlying that decision is erroneous, no substantial rights have been affected. *See id.* "The procedural improprieties alleged by [Qualls] will therefore constitute a basis for remand only if such improprieties would cast into doubt the existence of substantial evidence to support the ALJ's decision." *Morris v. Bowen*, 864 F.2d 333, 335 (5th Cir. 1988).

Qualls's attack on the ALJ's decision is without merit. She has failed to show that the ALJ's disability determination would have been different if the ALJ had not mistakenly noted that her annular tear had been repaired. A review of the record reveals that the ALJ did not make his decision in reliance on the determination that surgery had eliminated the defect. In fact, the surgery is only mentioned once in the eight page opinion—in the ALJ's review of Qualls's medical history.

Rather, in analyzing her physical limitations, the ALJ heard testimony from Qualls, reviewed the medical records submitted, and solicited the opinion of a vocational expert. None of these are alleged to have labored under the same misconception with respect to Qualls's annular tear. The effectiveness of the annuloplasty had no impact on the ALJ's disability determination and Qualls's speculation that the ALJ's decision would have been different without this technical error is unfounded. As the district court pointed out, despite the error, the ALJ found that Qualls was severely impaired due to back pain. The question was never whether Qualls suffered nor whether the annular tear had been repaired but the extent to which this suffering affected her ability to work.

With respect to the effect that the ALJ's mistake may have had on the determination that Qualls was not credible, the record reveals that the assessment of the annular tear played no part in this analysis. The ALJ compared Qualls's testimony with the physical pain she described to her doctors, noting that while Qualls stated that she experienced daily back pain at a level of 9 on a 10-point scale, she consistently told Dr. Steuer that her pain level was only between 4 to 6. At the hearing, she represented that she was very limited in her ability to perform household chores but had previously told doctors that she performed these without much difficulty. She further testified that her pain was only marginally alleviated by medication despite having told her treating physicians that Oxycontin was extremely effective in controlling her pain. The

ALJ pointed out other inconsistencies. Among these, Qualls: 1) testified that her back impairment was the result of a 1988 car accident which severely limited her physical abilities but continued to work for many years thereafter and maintained an active lifestyle; 2) stated that she could only sit for twenty minutes but her testimony was belied by the fact that she testified to having taken a car trip to the Smokey Mountains; 3) wore an arm brace during the hearing and claimed that it was to treat her Sjogren's Syndrome but later admitted that she has only begun wearing the brace a few days prior to the hearing, no physician record substantiated the need for the brace, and she had never been treated for Sjogren's Syndrome; 4) engaged in ongoing pain behavior during the hearing as well as flailing maneuvers of her arms, none of which had ever been previously communicated to doctors or formed part of her medical records. As is evident from the record, Qualls was discredited by inconsistencies in her testimony, the medical record before the ALJ, and her behavior during the hearing, not the ALJ's mistake.

Because the ALJ's decision would not have been different without the error regarding Qualls's annular tear, was not based on the effectiveness of the annuloplasty in any event, and did not affect Qualls's substantial rights, the mistake was harmless. *Mays*, 837 F.2d at 1364. Accordingly, Qualls is not entitled to reversal or a new disability hearing.

## II.    The treating physician's opinion

Qualls asserts that the district court erred in its determination that the opinion of her treating physician, Dr. Steuer, did not meet the legal standard for controlling weight. She argues that Dr. Steuer's opinion, which found her disabled, should have been given controlling weight because she saw him numerous times before applying for disability and he completed a Medical Source Statement. Essentially, Qualls maintains that Dr. Steuer's disability determination should prevail over contrary evidence in the record and that the

ALJ committed an error of law by failing to give his opinion controlling weight. Qualls also argues that the ALJ gave Dr. Steuer's opinion no weight and failed to perform the statutory analysis required when making this decision.

Where the ALJ rejects the opinion of the treating physician, we have held that, "absent reliable medical evidence from a treating or examining physician controverting the claimant's treating specialist, an ALJ may reject the opinion of the treating physician *only* if the ALJ performs a detailed analysis of the treating physician's views under the criteria set forth in 20 C.F.R. § 404.1527(d)(2)." *Newton v. Apfel*, 209 F.3d 448, 453 (5th Cir. 2000). Under the statutory analysis, the ALJ must evaluate: (i) the "[l]ength of the treatment relationship and the frequency of examination," (ii) the "[n]ature and extent of the treatment relationship," (iii) the supporting evidence presented by the physician, (iv) the level of consistency between the physician's opinion and the record, (v) the physician's specialization, and (vi) any other relevant factors. 20 C.F.R. § 404.1527(d)(2)–(6). The opinion of a treating physician "may be assigned little or no weight when good cause is shown. Good cause may permit an ALJ to discount the weight of a treating physician relative to other experts where the treating physician's evidence is conclusory, is unsupported by medically acceptable clinical, laboratory, or diagnostic techniques, or is otherwise unsupported by the evidence." *Newton*, 209 F.3d at 455–56 (citation omitted); *see also Martinez v. Chater*, 64 F.3d 172, 176 (5th Cir. 1995) (in determining whether to give a treating physician's opinion controlling weight, the ALJ must look to whether the opinion is "'well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with . . . other substantial evidence'" (quoting 20 C.F.R. § 404.1527(d)(2))). "[A]lthough the opinion of an examining physician is generally entitled to more weight than the opinion of a non-examining physician, the ALJ is free to reject

the opinion of any physician when the evidence supports a contrary conclusion." *Bradley v. Bowen*, 809 F.2d 1054, 1057 (5th Cir. 1987) (quotation omitted).

The ALJ did not follow the statutory analysis specified in *Newton* for rejecting a treating physician's opinion.[2] Nevertheless, Qualls's challenge fails and the district court properly determined that the ALJ did not err in declining to give Dr. Seuer's opinion controlling weight.

As an initial matter, the record does not support the assertion that the ALJ completely discounted Dr. Steuer's opinion. The ALJ only rejected parts of Dr. Steuer's opinion; specifically, those that did not conform to his own clinical notes and contradicted the record. In its extensive analysis of each physician's opinion, the ALJ pointed out that Dr. Steuer consistently documented improvement in Qualls's pain but then, with no explanation of the sudden change, opined that Qualls was so severely limited as to be unable to perform even sedentary work. This was inconsistent with both his own clinical notes and the opinions of the other examining physicians.

The ALJ properly declined to give Dr. Steuer's opinion controlling weight and did not err by failing to perform the statutory analysis outlined in *Newton*. First, *Newton* specifically states that the statutory steps must be followed "absent reliable medical evidence from a treating or examining physician controverting the claimant's treating specialist." 209 F.3d at 453. The ALJ *was* presented with substantial evidence which contradicted Dr. Steuer's opinion. Qualls was seen by five treating physicians and, despite evidence that she informed several doctors that she sought disability benefits, she obtained a Medical Source Statement from only one—Dr. Steuer. From October to December 2002, Dr. Steuer documented excellent improvement in Qualls's

---

[2] While the ALJ stated that he "weighed the medical opinions of record with consideration of the factors set out in . . . 20 CFR 404.1527" he failed to set forth these factors or provide an analysis of each element.

symptoms and indicated that she had only moderate difficulty in performing the activities of daily life. Nevertheless, the Medical Source Statement he filled out two months later stated that Qualls was incapable of performing even sedentary work. Nothing in Qualls's medical record explains the sudden change and the inconsistency between Dr. Steuer's Medical Source Statement and his clinical notes. On the contrary, Dr. Tucker and Dr. Staggs, Qualls's prior physicians, determined that her limitations were not disabling. Two other doctors, Dr. Welch and Dr. Galyon, also completed Medical Source Statements after examining Qualls. While Dr. Welch determined that she was so disabled as to be unable to perform even sedentary work, Dr. Galyon disagreed. The ALJ gave Dr. Welch's opinion little weight, finding it to diverge from the record and Qualls's own claims. Dr. Welch opined that Qualls suffered from a range of physical limitations of which Qualls had never complained and which none of her treating physicians had ever observed. By contrast, Dr. Galyon's opinion was supported by the independent medical analysis of Qualls's other treating physicians, Dr. Tucker and Dr. Staggs, as well as Dr. Steuer's own clinical notes.

Second, even if we read *Newton* as requiring the ALJ to set forth its analysis of the five statutory elements when declining to give controlling weight to a treating physician, *Newton* does not apply. The *Newton* court limited its holding to cases where the ALJ rejects the sole relevant medical opinion before it. In *Newton*, "the ALJ summarily rejected the opinions of [claimant's] treating physician, based only on the testimony of a non-specialty medical expert who had not examined the claimant." 209 F.3d at 458. *Newton* was not a case with "competing first-hand medical evidence" where the ALJ found "as a factual matter that one doctor's opinion [wa]s more well-founded than another. . . . Nor [wa]s this a case where the ALJ weigh[ed] the treating physician's opinion on disability against the medical opinion of other physicians who [had] treated or examined the claimant and [had] specific medical bases for a contrary opinion."

*Id.* The *Newton* court also dealt with an incomplete record. None of these factors are present here. As previously noted, the ALJ's decision was based on the medical opinion of doctors who had treated and examined Qualls. These physicians had informed, first-hand, knowledge to support their opinions.

Because Dr. Steuer's opinion was not "well-supported by medically acceptable clinical and laboratory diagnostic techniques" and was "inconsistent with . . . other substantial evidence" in the record, the ALJ was not required to give his opinion controlling weight. *Martinez*, 64 F.3d at 176 (quotation omitted). The ALJ applied the proper legal standard and his decision is supported by substantial evidence. *See Brown*, 192 F.3d at 496.

## CONCLUSION

The judgment of the district court is AFFIRMED.