# IN THE UNITED STATES COURT OF APPEALS
# FOR THE FIFTH CIRCUIT

No. 15-31030

United States Court of Appeals
Fifth Circuit

**FILED**
August 4, 2016

Lyle W. Cayce
Clerk

MARY BOTSAY,

> Plaintiff - Appellant

v.

CAROLYN W. COLVIN, ACTING COMMISSIONER OF SOCIAL
SECURITY,

> Defendant - Appellee

Appeal from the United States District Court
for the Eastern District of Louisiana
USDC No. 2:14-CV-2573

Before STEWART, Chief Judge, and PRADO and SOUTHWICK, Circuit
Judges.

PER CURIAM:[*]

The Social Security Administration concluded Mary Botsay was not
entitled to disability insurance benefits and supplemental security income.
The district court affirmed the decision. We also AFFIRM.

## FACTS AND PROCEDURAL BACKGROUND

Mary Botsay filed an application for disability benefits and supplemental
security income, asserting that her disability began in August 2011. At the

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not
be published and is not precedent except under the limited circumstances set forth in 5TH
CIR. R. 47.5.4.

No. 15-31030

onset of her alleged disability, Botsay was 57 years old.  Botsay, who is high-school educated, had a long employment history as a customer service representative and data entry clerk.  She contended she was no longer able to work due to osteoarthritis in her right knee, a mild hallux valgus deformity in her left foot, bilateral hand pain, and possible nerve damage in her right shoulder.  Several doctors treated Botsay over a three-year period, with others reviewing her case on a consultative basis.

On September 24, 2013, Botsay's initial application for benefits was denied by the Social Security Administration ("SSA").  Botsay requested a hearing, at which she successfully moved to amend her disability onset date to August 1, 2012.  In May 2014, an administrative law judge ("ALJ") determined Botsay was not disabled because she had the residual functional capacity for sedentary work as a customer service representative or data entry clerk with some limitations.  The Appeals Council denied Botsay's request for review of the ALJ's decision.  Botsay then filed suit against the SSA Commissioner seeking to overturn the ALJ's disability determination.  The district court, adopting the magistrate judge's report and recommendation, concluded the ALJ committed harmless error in explaining the outcome of one medical test.  Otherwise, the district court held substantial evidence supported the ALJ's assessment of Botsay's capacity for work.  Botsay timely appealed.

## DISCUSSION

We do not "reweigh the evidence or substitute [our] judgment for the Commissioner's" in reviewing the denial of benefits.  *Perez v. Barnhart*, 415 F.3d 457, 461 (5th Cir. 2005).  Instead, we are restricted "to two inquiries: . . . whether the [administrative] decision is supported by substantial evidence on the record as a whole, and . . . whether the Commissioner applied the proper legal standard."  *Id.*; *see also* 42 U.S.C. §§ 405(g), 1383(c)(3).  Substantial

No. 15-31030

evidence "is more than a mere scintilla and less than a preponderance." *Perez*, 415 F.3d at 461 (quotation marks omitted).

Relevant regulations establish a "five-step analysis" to determine whether a claimant is eligible for benefits: (1) the claimant is not engaged in "substantial gainful [work] activity"; (2) the claimant's impairment is "severe"; (3) the impairment "meets or equals . . . an impairment" listed in Appendix 1 of the SSA regulations; (4) the claimant lacks the residual functional capacity to perform "past relevant work"; and (5) there is no other substantial gainful activity that the claimant would be able to perform. *See id.*; *see also* 20 C.F.R. § 404.1520(a)(4)(i)–(v). Through step four, the burden of proof rests upon the claimant to show she is disabled. *Id.* At the last step, "the burden shifts to the Commissioner" to show that there is other gainful employment the claimant is capable of performing despite her existing impairments. *Id.*

Here, the ALJ resolved Botsay's case at the fourth step, concluding that Botsay's impairments could cause some of the symptoms she alleged, but that Botsay's "statements concerning the intensity, persistence and limiting effects of [those] symptoms are not entirely credible . . . ." Thus, the ALJ determined Botsay was capable of performing past relevant sedentary work as a customer service representative and data entry clerk.

On appeal, Botsay argues that her case "hinge[s]" on the assessment of her dominant right upper extremity limitations because her past jobs involved typing and other computer and office tasks. At the administrative hearing, a vocational expert agreed with the following hypothetical posed by the ALJ: if Botsay could "*frequently* perform overhead reaching with the dominant right upper extremity and . . . frequently handle, finger, and feel with" the same, Botsay could continue working as a customer service representative or data entry clerk. (emphasis added). If Botsay could only "*occasional[ly]*" engage in those activities, though, the expert agreed that Botsay would not be able to

engage in past relevant work.  (emphasis added).  Botsay contends the ALJ's decision is not supported by substantial evidence because the ALJ mischaracterized objective medical evidence showing the severity of her upper extremity limitations and incorrectly found Botsay's testimony about the intensity and effects of her symptoms not credible.

Botsay specifically points to two medical evaluations.  First, she asserts that a February 2014 MRI revealed chronic tendinitis of the supraspinatus, a small muscle in the upper back that affects the shoulder blade; a tear in her coracoclavicular ligament, which also affects the shoulder; moderate chronic degenerative changes in her acromioclavicular joint, which is at the top of the shoulder; and subacromial bursitis, or a condition caused by inflammation of one of the tendons in her rotator cuff.  Thus, Botsay argues, the ALJ erred in finding that the MRI showed "no tendonitis" and in characterizing her diagnosis as a "mere[] . . . sprain."

Second, Botsay claims that the ALJ's assessment that a July 2013 exam was "within normal limits" was "clearly wrong."  Botsay emphasizes that the doctor noted positive full can, Whipple, and Hawkins tests, indicating pain or weakness in her shoulder.  The exam also revealed crepitus, or cracking when moving the joint, in the thumb and bilateral thumb arthritis.  Botsay argues these assessments are corroborated by past positive tests used to diagnose carpal tunnel syndrome or nerve issues in the hands.

Botsay is correct that the ALJ misread the February 2014 MRI.  Although, as the magistrate judge noted, the copy of the MRI results in the record is very unclear, the notation is of "rc tendonitis" and not "no tendonitis." We have held, though, that a mistake in an ALJ's decision does not automatically render the entire decision unsupported by substantial evidence. *See Qualls v. Astrue*, 339 F. App'x 461, 464 (5th Cir. 2009) (analyzing the effect of an ALJ's mischaracterization of an annular tear in the ALJ's denial of

disability benefits). For that outcome, a claimant must "show that the ALJ's disability determination would have been different if the ALJ had not" made the mistake. *Id.* We do not find Botsay successful in that regard.

As an initial matter, the Government is correct that, despite the mistaken reading of the MRI, the ALJ acknowledged that other previous tests showed Botsay has tendonitis and other shoulder problems. The ALJ's discussion of Botsay's "sprain," moreover, was consistent with Botsay's medical records. Dr. Mae Ewing Young, who examined Botsay in March 2014 after the MRI, diagnosed Botsay with a "[r]otator cuff . . . sprain." The ALJ categorized both Botsay's sprain, tendonitis, and carpal tunnel diagnoses as "severe."

Furthermore, as to the July 2013 exam, Dr. Edward Lee Smith noted that Botsay had "[f]ull abduction and flexion with" average range of motion in Botsay's right shoulder, as well as "[g]ood strength with internal and external rotation." Therefore, while the July 2013 exam revealed Botsay was experiencing some shoulder pain and crepitus and arthritis in her thumbs, it also showed that some of Botsay's diagnoses were within a normal range.

Other previous examinations corroborate Dr. Smith's report. For example, in a consultative exam in October 2012, Dr. Miljana Mandich provided that Botsay "has full range of motion of all joints including both shoulder[s] and both knees[,]" and "normal gripping, grasping and dexterity bilaterally." Notes from a January 2013 exam with Dr. Sohale Sadeghpour reflect a similar assessment, and that Botsay wanted to continue "conservative treatment for" her hand pain. Other medical records indicate that, at least as of March 2014, Botsay had never received physical therapy or shots for her shoulder pain. At the administrative hearing, Botsay reported that she had never received any treatment for her hand pain.

Aside from misreading the MRI, the ALJ fairly summarized the available medical evidence. More importantly, the ALJ reviewed and weighed

that evidence to discern the extent of Botsay's impairments and symptoms and their impact on her capacity for work. "Under the regulations and our case law, the determination of residual functional capacity is the sole responsibility of the ALJ." *Taylor v. Astrue,* 706 F.3d 600, 602–03 (5th Cir. 2012).

Botsay next asserts that, in light of the objective medical evidence, the ALJ "grossly mischaracterize[d]" her testimony and function report in "giving the mistaken impression that she is fully and independently functional with respect to" her daily activities. Specifically, Botsay points to her allegations that pain in her arm and hands makes it impossible for her to cook large meals, do laundry, hold a hose, or operate her computer for longer than 15 minutes. Botsay also contends the ALJ erred in failing to consider her lengthy prior work history in his credibility determination.

Our review of the record shows that the ALJ acknowledged most of the limitations Botsay emphasizes in her brief, and acknowledged that Botsay received assistance with some household chores from her sister. The ALJ also properly took into account, though, Botsay's admissions that she lives alone, drives, executes some chores, waters small plants, visits with neighbors, and goes out to lunch. We have held that activities such as these can negatively impact credibility when the claimant's contention is that her disabilities are so severe so as to eliminate the possibility of even sedentary work. *See Anthony v. Sullivan,* 954 F.2d 289, 295–96 (5th Cir. 1992). As to Botsay's employment, the ALJ noted that Botsay "ha[d] a lengthy history of clerical work . . . ." Regardless, as the magistrate judge pointed out, the ALJ's credibility determination seemingly had nothing to do with Botsay's work history; it related to Botsay's testimony about her alleged pain in light of her daily activities and the objective medical evidence.

In sum, the ALJ found that Botsay's various medical examinations revealed some discomfort in Botsay's shoulder and hands. Those examinations

No. 15-31030

also demonstrate, though, that Botsay could engage in nearly a full range of motion without significant tenderness, had normal grip and dexterity, had received no physical therapy or shots for her shoulder pain, and had received no treatment for her hand pain. Despite some limitations, moreover, the record demonstrates that Botsay admitted that she is able to engage in a wide variety of daily activities. "At a minimum, objective medical evidence must demonstrate the existence of a condition that could reasonably be expected to produce the level of pain or other symptoms alleged." *Id.* at 296. The ALJ's finding that Botsay is capable of working as a customer service representative or data entry clerk, or engaging in other similar sedentary work with some limitations, is supported by substantial evidence.

AFFIRMED.