# United States Court of Appeals for the Fifth Circuit

————————

No. 23-30831

————————

United States Court of Appeals
Fifth Circuit

**FILED**

July 12, 2024

Lyle W. Cayce
Clerk

Joshua Jones,

*Plaintiff—Appellant*,

*versus*

Martin O'Malley, *Commissioner of Social Security*,

*Defendant—Appellee*.

———————————————————————

Appeal from the United States District Court
for the Eastern District of Louisiana
USDC No. 2:22-CV-443

———————————————————————

Before Smith, Engelhardt, and Ramirez, *Circuit Judges*.

Kurt D. Engelhardt, *Circuit Judge*:

Plaintiff Joshua Jones appeals the judgment of the district court affirming the Commissioner of Social Security's denial of his claims for disability insurance benefits ("DIB") and supplemental security income ("SSI") under Titles II and XVI of the Social Security Act ("Act"), 42 U.S.C. §§ 423, 1381. Because we conclude that the Commissioner's decision is based upon proper legal standards and is supported by substantial evidence, we AFFIRM.

No. 23-30831

## I.

On October 1, 2019, Jones submitted applications for SSI and DIB, asserting a disability onset date of February 22, 2018.[1] He alleged the following illnesses, injuries, or conditions: "cervical and lumbar regions, disc herniation bulging and derangement L4-5, L5-S1, C5-6, C7, blurring vision, diabetes, neuropathy, broken great toe on the right [foot], high blood pressure, high cholesterol." The applications were denied, at the agency level, on March 12, 2020, and upon reconsideration, on November 10, 2020.[2] Thereafter, on February 23, 2021, Jones, represented by counsel, filed a request for a hearing before an administrative law judge ("ALJ"). The hearing was held, via telephone, on August 5, 2021.[3]

---

[1] Prior to the August 5, 2021 hearing before the ALJ, Jones amended his onset date to December 10, 2019.

[2] As explained in *Bowen v. Yuckert*, 482 U.S. 137, 142 (1987):

> The initial disability determination is made by a state agency acting under the authority and supervision of the [Commissioner]. 42 U.S.C. §§ 421(a), 1383b(a); 20 C.F.R. §§ 404.1503, 416.903 (1986). If the state agency denies the disability claim, the claimant may pursue a three-stage administrative review process. First, the determination is reconsidered *de novo* by the state agency. §§ 404.909(a), 416.1409(a). Second, the claimant is entitled to a hearing before an administrative law judge ("ALJ") within the Bureau of Hearings and Appeals of the Social Security Administration. 42 U.S.C. §§ 405(b)(1), 1383(c)(1) (1982 ed. and Supp. III); 20 C.F.R. §§ 404.929, 416.1429, 422.201 *et seq.* (1986). Third, the claimant may seek review by the Appeals Council. 20 C.F.R. §§ 404.967 *et seq.,* 416.1467 *et seq.* (1986). Once the claimant has exhausted these administrative remedies, he may seek review in federal district court. 42 U.S.C. § 405(g). See generally *Bowen v. City of New York,* 476 U.S. 467, 472 (1986).

[3] The hearing was held via telephone, with Jones' consent, because of the extraordinary circumstances presented by the COVID-19 pandemic.

No. 23-30831

On October 6, 2021, the ALJ issued a decision denying Jones' claims. Jones timely appealed to the Appeals Council, which denied review on January 4, 2022.

On February 21, 2022, Jones sought judicial review of the Commissioner's final administrative decision by filing suit in federal district court. *See* 42 U.S.C. § 405(g). The magistrate judge, considering cross-motions for summary judgment, recommended that Jones' motion be denied and that the Commissioner's motion be granted. *See* 28 U.S.C. § 636(b). On September 26, 2023, the district judge overruled Jones' objections, adopted the June 26, 2023 report and recommendation, denied Jones' motion for summary judgment, granted the Commissioner's cross-motion, and dismissed Jones' claims with prejudice. Following entry of a final judgment, this appeal followed. Appellate jurisdiction is provided by 28 U.S.C. § 1291.

## II.

Title II of the Act provides for the payment of insurance benefits to persons who have contributed to the program and suffer from a physical or mental disability. 42 U.S.C. § 423(a)(1)(D). Title XVI of the Act provides for the payment of disability benefits to indigent persons under the SSI program. 42 U.S.C. § 1382(a). Both titles of the Act define "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months[.]" 42 U.S.C. § 423(d)(1)(A); § 1382c(a)(3)(A); *see also Newton v. Apfel,* 209 F.3d 448, 452 (5th Cir. 2000) (claimant must have "a medically determinable physical or mental impairment lasting at least twelve months that prevents [the claimant] from engaging in substantial gainful activity").

No. 23-30831

As authorized by Congress, the Commissioner has promulgated regulations establishing procedures for evaluating claims and determining disability. *See* 42 U.S.C. §§ 405(a) and 1383(d)(1). Pursuant to 20 C.F.R. § 404.1520, a five-step sequential process is used to decide whether the applicant is disabled. *Newton,* 209 F.3d at 453 (citing 20 C.F.R. § 404.1520).

Specifically, the Commissioner determines (1) whether the claimant is performing substantial gainful activity (if so, he is not disabled); (2) whether the claimant has a severe impairment (if not, he is not disabled); (3) whether the claimant's impairment meets or equals one of the listed impairments set forth in Appendix 1 of the applicable regulations, *see* 20 C.F.R. pt. 404, subpt. P, app. 1 (if so, he is disabled; if not, the inquiry proceeds to step four); (4) whether the claimant's residual functional capacity allows him to perform his past work (if so, he is not disabled); and, (5) if not, whether the claimant, considering his residual functional capacity, age, education, and work experience, is able to adjust to other work. *See* 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4); *Barnhart v. Thomas*, 540 U.S. 20, 24–25 (2003).

The claimant bears the burden of proof for the first four steps and it shifts to the Commissioner for the fifth step. *Newton,* 209 F.3d at 453. If the Commissioner fulfills the burden of pointing out potential alternative employment, the burden then shifts back to the claimant to prove that he cannot perform the alternate work. *Boyd v. Apfel*, 239 F.3d 698, 705 (5th Cir. 2001) (citing *Muse v. Sullivan*, 925 F.2d 785, 789 (5th Cir. 1991)); *Newton*, 209 F.3d at 453.

## III.

On appeal, Jones asserts three issues. We review a denial of social security benefits "only to ascertain whether (1) the final decision is supported by substantial evidence and (2) whether the Commissioner used the proper

4

legal standards to evaluate the evidence." *Newton*, 209 F.3d at 452. "A finding of no substantial evidence is appropriate only if no credible evidentiary choices or medical findings support the decision." *Boyd*, 239 F.3d at 704 (quoting *Harris v. Apfel*, 209 F.3d 413, 417 (5th Cir. 2000)).

A. "Retroactive" Application of Listing 1.15

Jones' first issue concerns step three of the five-step sequential process.    At step three, the ALJ considers whether the claimant's impairment meets or equals one of the listed impairments set forth in Appendix 1 of the regulations, *see* 20 C.F.R. pt. 404, subpt. P, app. 1, *Listing of Impairments* ("Listings").  The listed impairments are physical and mental impairments that are considered disabling regardless of the claimant's age, education, or work experience. *Sullivan v. Zebley*, 493 U.S. 521, 529–30 (1990); 20 C.F.R. pt. 404, subpt. P, app. 1.  Thus, if a claimant has one of the listed impairments, and satisfies the requisite criteria of severity, the claimant is disabled, and the sequential evaluation ends at step three. 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii); *see also Zebley*, 493 U.S. at 530; *Bowen v. Yuckert*, 482 U.S. 137, 141 (1987).

In this instance, Jones argues that the ALJ should have evaluated his claims utilizing Listing 1.04—the applicable musculoskeletal listing that was in effect in October 2019, when Jones filed his applications for benefits, and in March and November 2020, when his claims were considered and denied at the agency level—rather than Listing 1.15, which became effective on April 2, 2021. *See* 20 C.F.R. pt. 404, subpt. P, app. 1. Because his claims were filed more than a year prior to Listing 1.15's effective date, and Listing 1.15 requires satisfaction of additional, more stringent criteria than Listing 1.04,[4]

---

[4] Listing 1.15 addresses disorders of the skeletal spine resulting in compromise of a nerve root(s). *See* 20 C.F.R. pt. 404, subpt. P, app. 1, § 1.15. The ALJ focused on the fact that Jones did not meet the criteria of section D of the Listing, which requires:

No. 23-30831

_____

1. A documented medical need for a walker, bilateral canes, or bilateral crutches or a wheeled and seated mobility device involving the use of both hands; or

2. An inability to use one upper extremity to independently initiate, sustain, and complete work-related activities involving fine and gross movements, and a documented medical need for a one-handed, hand-held assistive device that requires the use of the other upper extremity or a wheeled and seated mobility device involving the use of one hand; or

3. An inability to use both upper extremities to the extent that neither can be used to independently initiate, sustain, and complete work-related activities involving fine and gross movements.

20 C.F.R. pt. 404, subpt. P, app. 1, § 1.15(D) (effective April 2, 2021).

Applying Listing 1.15, the ALJ found that it was not met because "there was no evidence to support the medical necessity of a hand-held assistive device nor an inability to use both upper extremities." Jones admits that he does not use a hand-held assistive device and does not have the inability to use both upper extremities.

Listing 1.04 did not impose either of these requirements, outlining the criteria for disorders of the spine as follows:

Disorders of the spine (e.g., herniated nucleus pulposus, spinal arachnoiditis, spinal stenosis, osteoarthritis, degenerative disc disease, facet arthritis, vertebral fracture), resulting in compromise of a nerve root (including the cauda equina) or the spinal cord. With:

A. Evidence of nerve root compression characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss and, if there is involvement of the lower back, positive straight-leg raising test (sitting and supine).

or

B. Spinal arachnoiditis, confirmed by an operative note or pathology report of tissue biopsy, or by appropriate medically acceptable imaging, manifested by severe burning or painful dysesthesia, resulting in the need for changes in position or posture more than once every 2 hours;

or

6

Jones maintains that the ALJ's application of Listing 1.15 to his pending claim was impermissibly retroactive and violated his constitutional due process and equal protection rights.

Although we have not previously had occasion to do so, the D.C., Sixth, and Seventh Circuits have considered, and rejected, similar retroactivity challenges to the application of amended Listings to pending disability claims. *See Cox v. Kijakazi*, 77 F.4th 983 (D.C. Cir. 2023); *Combs v. Comm'r of Soc. Sec.*, 459 F.3d 640 (6th Cir. 2006) (en banc); *McCavitt v. Kijakazi*, 6 F.4th 692 (7th Cir. 2021). Guided by the Supreme Court's analysis in *Landgraf v. USI Film Prod.*, 511 U.S. 244, 280 (1994), these courts have determined that the Social Security Administration's ("SSA") application of amended Listings to pending disability claims is not properly regarded as retroactive.[5]

The Supreme Court's analysis in *Landgraf* confirms that "[a] statute does not operate 'retrospectively' merely because it is applied in a case arising from conduct antedating [its] enactment[.]" 511 U.S. at 269. "Rather, the court must ask whether the new provision attaches new legal consequences to events completed before its enactment." *Id.* at 269–70. Thus, a newly enacted statute or regulation has a retroactive effect when "it would impair rights a party possessed when he acted, increase a party's

---

C. Lumbar spinal stenosis resulting in pseudoclaudication, established by findings on appropriate medically acceptable imaging, manifested by chronic nonradicular pain and weakness, and resulting in inability to ambulate effectively, as defined in 1.00B2b.

20 C.F.R. pt. 404, subpart P, app. 1, § 1.04(A) (effective Feb. 19, 2002 through April 1, 2021); *see* 66 Fed. Reg. 58,040, 2001 WL 1453802 (Nov. 19, 2001).

[5] Congress has not granted the SSA authority to promulgate rules that are retroactive within the meaning of *Landgraf. See Cox*, 77 F.4th at 991.

liability for past conduct, or impose new duties with respect to transactions already completed." *Id.* at 280. In contrast, when a "new statute[] passed after the events in suit . . . authorizes or affects the propriety of prospective relief, application of the new provision is not retroactive." *Id.* at 273.

Of course, "deciding when a statute operates 'retroactively' is not always a simple or mechanical task." *Id.* at 268. Instead, "[t]he conclusion that a particular rule operates 'retroactively' comes at the end of a process of judgment concerning the nature and extent of the change in the law and the degree of connection between the operation of the new rule and a relevant past event." *Id.* at 270. "Familiar considerations of fair notice, reasonable reliance, and settled expectations offer sound guidance" for this analysis. *Id.*

Having carefully examined the *Cox*, *Combs*, and *McCavitt* decisions, as well as contrary determinations by the Ninth Circuit and the district court for the Northern District of California,[6] the district court was persuaded that applying Listing 1.15 to Jones' pending Social Security application does not

---

[6] *Maines v. Colvin*, 666 F. App'x 607, 608 (9th Cir. 2016), an unpublished opinion, is not persuasive. Its determination that the relevant Listings were those in effect on the date that the claimant's application was filed is premised solely on 42 U.S.C. § 1382(c)(7) (establishing the effective date of an application for benefits based on the later of the application's filing date and the date the applicant becomes eligible for benefits). The decision also lacks any consideration of *Landgraf*'s retroactivity standards.

*Kokal v. Massanari*, 163 F. Supp. 2d 1122, 1130–33 (N.D. Cal. 2001), directed that the claim for benefits be determined utilizing the obesity Listing in effect on the date that the application was filed, reasoning that using the later, more demanding Listing would have an adverse retroactive effect on the plaintiff's substantive rights. *Kokal* is not persuasive for the reasons stated in *Combs*: "The actual substantive right to benefits derives from the Act's definition of disability, *not* step three [the Listings]." *Combs*, 459 F.3d at 650 (emphasis added). "A change in step three requiring more detailed proof simply does not attach new legal consequences to the act of filing a claim." *Id.* "The application of the revised listing to claims filed before the change is accordingly not retroactive in a way that would make the regulation beyond the authorized rulemaking power of the Commissioner." *Id.*

yield impermissible retroactive effects. Guided by the *Landgraf* principles and the thorough analyses undertaken by our sister circuits, as well as the district court judge and magistrate judge assigned to this matter, we agree. The SSA's application of the amended musculoskeletal listing, Listing 1.15, to Jones' pending claims does not deny fair notice, disrupt reasonable reliance, or impair settled expectations.

A "regulation is not impermissibly retroactive" where "it does not completely foreclose relief." *Perez Pimentel v. Mukasey*, 530 F.3d 321, 326 (5th Cir. 2008). Under the five-step evaluation process, a claimant who does not satisfy one of the Listings "still has the opportunity to show that his impairment in fact prevents him from working." *Zebley*, 493 U.S. at 535. As noted in *Cox*, the Listings only "operate as a presumption of disability that makes further inquiry unnecessary." 77 F.4th at 992 (quoting *Zebley*, 493 U.S. at 532). "An applicant can still demonstrate disability at steps four and five" such that a change to the Listings will not operate to foreclose entitlement to disability benefits. *Cox*, 77 F.4th at 992 (citing *Combs*, 459 F.3d at 656 (Gilman, J., concurring)).

Nor does the SSA's application of updated Listings to pending disability claims impair Jones' vested rights, i.e., "legal rights that [he] already possessed" when he filed his claim. *Cox*, 77 F.4th at 991. A claimant "ha[s] no right to [disability] benefits at the time [he] files a claim" because his "status ha[s] not yet been adjudicated." *Id.* at 992; *see also McCavitt*, 6 F.4th at 694 ("Rights under a statute may be said to vest on the date of a judicial decision, for neither Congress nor an agency can alter a judgment once one has been rendered. . . . But until then claims that rest on statutes or regulations are contingent, and the rules may change.") (citing *Plaut v. Spendthrift Farm, Inc.*, 514 U.S. 211 (1995)); *see also Brown v. Apfel*, 192 F.3d 492, 497 (5th Cir. 1999) (recognizing that a claimant whose application has

been denied has "no vested property or contract rights in social security benefits").[7]

Jones suggests he anticipated that the prior rules would apply to his disability claims. But a law that merely "upsets expectations based in prior law" does not thereby operate retrospectively. *Landgraf*, 511 U.S. at 270. "[A]nticipation alone does not create a vested right." *Cox*, 77 F.4th at 992.

Furthermore, the SSA's decision to revise its musculoskeletal Listings was not unusual or unforeseeable. The SSA periodically updates its Listings to reflect advances in medical knowledge, treatment, and methods of evaluating impairments. The Commissioner amends the Listings through notice-and-comment rulemaking to "reflect advances in medical knowledge, treatment, and methods of evaluating . . . impairments." *See Revised Medical Criteria for Determination of Disability, Musculoskeletal System and Related Criteria*, 66 Fed. Reg. 58,010, 2001 WL 1453802 (Nov. 19, 2001). The revisions "help to ensure that determinations and decisions regarding disability have a sound medical basis, that claimants receive equal treatment through the use of specific criteria, and that people who are disabled can be readily identified and awarded benefits." *Id.*

The governing regulations in force when Jones filed his claims in October 2019 provided that the musculoskeletal Listings were set to expire in January 2020. Indeed, the introduction to the Listings advised that they would "'no longer be effective on [January 27, 2020] unless extended by the Commissioner or revised and promulgated again.'" *See* 20 C.F.R. pt. 404, subpt. P, app. 1 (2019).

---

[7] In contrast, "the interest of an individual in *continued* receipt of [social security] benefits is a statutorily created 'property' interest protected by the Fifth Amendment." *Mathews v. Eldridge*, 424 U.S. 319, 332 (1976) (emphasis added).

And, in May 2018, almost a year and a half *before* Jones filed his applications (asserting a February 2018 onset date) in October 2019, the SSA announced its proposed new musculoskeletal rules in a Notice of Proposed Rule Making (NPRM), which noted that the SSA had last updated its musculoskeletal Listings in 2001 and was proposing revisions, in 2018, to "reflect our adjudicative experience, advances in medical knowledge and treatment of musculoskeletal disorders, and recommendations from medical experts." 83 Fed. Reg. 20646-01, 2018 WL 2086894 (May 7, 2018). Once the SSA published its final rules in the Federal Register, the NPRM reported, the new "final rules [would] include an effective date," and the SSA would "continue to use the current rules until that date." *Id.* at 20,656.

Relevant here, the May 2018 NPRM proposed removing Listing 1.04 and evaluating musculoskeletal impairments under new Listings 1.15 and 1.16. *Id.* at 20,647. Thus, because the NPRM was already "in effect when [he] filed [his] claim," in October 2019, it would have been unreasonable for Jones to proceed on the assumption that the rule would remain static while his claim was adjudicated. *See Cox*, 77 F.4th at 993.

Following the SSA's consideration of public comments regarding the new rules that it had proposed in May 2018, the final version of Listings 1.15 and 1.16 took effect on April 2, 2021. *See Revised Medical Criteria for Evaluating Musculoskeletal Disorders,* 85 Fed. Reg. 78164-01, 2020 WL 7056412 (Dec. 3, 2020). And the December 2020 publication of the new SSA rules announced: "When the final rules become effective, we will apply them to new applications filed on or after the effective date of the rules, *and* to claims that are pending on or after the effective date." *Id.* (emphasis added).

The SSA's decision to apply the new musculoskeletal impairment Listings to pending claims also was not unusual. To the contrary, the SSA's usual practice is to apply amended Listings to claims that are pending at any

stage of the administrative review process, as well as to new claims that are filed after the amendment's effective date. *See, e.g.,* 66 Fed. Reg. at 58,011 (Nov. 19, 2001); 80 Fed. Reg. 19,525 (Apr. 13, 2015); 76 Fed. Reg. 19,692 (Apr. 8, 2011).

Jones also alludes to denials of due process and equal protection, citing the Fourteenth Amendment. The Fourteenth Amendment, however, applies to the states, not the federal government. *See, e.g.*, *Douglass v. Nipon Yusen Kabushiki Kaisha*, 46 F.4th 226, 236 (5th Cir. 2022) (en banc), *cert. denied*, 143 S. Ct. 1021 (2023). And Jones does not develop any constitutional argument independent of his contention that the ALJ's utilization of the amended Listings in determining his claims was impermissibly retroactive. Although Jones complains that a change in rules may result in otherwise similarly situated persons' being treated differently based on timing, such consequences are inevitable.

And, even where equal protection principles apply, unless a "suspect class [] or a fundamental right is implicated, the classification need only bear a rational relationship to a legitimate governmental purpose." *Big Tyme Invs., L.L.C. v. Edwards*, 985 F.3d 456, 468 (5th Cir. 2021). Jones has not demonstrated that the SSA's stated rationale for applying updated Listings to pending claims does not reflect legitimate government interests.

Finally, the Constitution does not establish a general prohibition against revision of federal agencies' rules. *McCavitt*, 6 F.4th at 694 (Constitution does not prevent SSA from applying amended Listings to pending claims). Given the foregoing, the Commissioner did not err in evaluating Jones' claims utilizing Listing 1.15, which became effective on April 2, 2021, rather than its predecessor, Listing 1.04.

B. Medical Equivalency Assessment

Jones' second issue on appeal also involves step three.  Specifically, he maintains that the ALJ's determination is not supported by substantial evidence because it lacks an evidentiary analysis of whether Jones' combined impairments are the medical equivalent of Listing 1.15.  Indeed, Jones contends: "the ALJ offered a wholly conclusory statement supported by no evidence."

Like the district court, we disagree. An impairment is medically equivalent to a listed impairment if it is at least equal in severity and duration to the criteria of any listed impairment. *See* 20 C.F.R. § 404.1526(a) ("Your impairment is medically equivalent to a listed impairment in appendix 1 if it is at least equal in severity and duration to the criteria of any listed impairment."); 20 C.F.R. § 416.926 (impairment is medically equivalent to a listing if medical findings related to the impairment are at least of equal medical significance). To demonstrate such equivalency, a claimant "must present medical findings equal in severity to *all* the criteria for the one most similar listed impairment." *Zebley*, 493 U.S. at 531;  *Selders v. Sullivan*, 914 F.2d 614, 619 (5th Cir. 1990).

Regarding equivalence, the ALJ explained:

[N]o treating or examining physician has mentioned findings equivalent in severity to the criteria of any listed impairment. In reaching this conclusion, the undersigned has also considered the opinions of the State agency medical consultants who evaluated this issue at the initial and reconsideration levels of the administrative review process.

Notably, in the paragraph that immediately precedes this statement, the ALJ's decision explains (on pages 4 and 5) that  Jones did not "meet" the functional criteria of Listing 1.15 or 1.16 because there was no evidence to support the medical necessity of a hand-held assistive device, or an inability

to use both upper extremities, that are required by Listings 1.15(D) and 1.16(D). Considering these provisions together, along with additional factual information set forth in the decision, the ALJ, contrary to Jones' assertion, sufficiently articulated the evidentiary bases of his equivalency finding. In short, the ALJ's finding was based on the absence of the equivalent functional impact to what is specified in part D of the relevant Listings.

Jones maintains, however, that the ALJ was compelled to find that his condition medically equaled Listing 1.15 based on his MRI examination findings, as well as the consultive examiner's functional assessments, observations, and tests. Yet Jones has not demonstrated how these clinical signs, his symptoms, and his limitations can be considered to medically equal the relevant criteria in Listing 1.15(D): a documented need for a walker or two crutches, an inability to use one upper extremity along with a documented need for a one-handed assistive device, or an inability to use both upper extremities.

It is Jones' burden to establish that his impairments medically equal a listed impairment, and he has not done so. Thus, substantial evidence supports the ALJ's conclusion that Jones' impairments do not meet or equal Listing 1.15.

C. Impact of Treatment "Interruptions" on Ability to Work

Jones' third issue on appeal challenges the sufficiency of the ALJ's consideration of his contention that interruptions to work schedules, routines, and attendance associated with his previous and ongoing medical treatment—including numerous epidural injections, nerve blocks, left-shoulder surgery, and numerous physical therapy appointments—prevented him from sustained, full-time gainful employment. In support of his assertion, Jones emphasizes the SSA's directive—in Social Security Ruling 96-8p—that residual functional capacity assessments "must be based on *all*

of the relevant evidence in the case record," which includes "[t]he effects of treatment, including limitations or restrictions imposed by the mechanics of treatment (e.g., frequency of treatment, duration, disruption to routine, side effects of medication)." *See Title II and XVI: Assessing  Residual Functional Capacity in Initial Claims*," SSR 96-8p, 1996 WL 374184, at *5 (July 2, 1996).

Jones also cites our decisions recognizing that "if an individual's medical treatment significantly interrupts the ability to perform a normal, eight-hour work day, [] the ALJ must determine whether the effect of treatment precludes the claimant from engaging in gainful activity." *Newton*, 209 F.3d at 459 (citing *Epps v. Harris*, 624 F.2d 1267, 1273 (5th Cir. 1980)). Finally, he cites *Watson v. Barnhart*, 288 F.3d 212 (5th Cir. 2002), for the proposition that this court "has found error where the ALJ failed to determine whether a condition precluded a person from maintaining, not just engaging in, substantial gainful employment."

The district court found Jones' reliance on *Epps*, *Newton*, and *Watson* unavailing.  We do too.  Our later cases have clarified that "nothing in *Watson* suggests that the ALJ must make a specific finding regarding the claimant's ability to maintain employment in every case." *Perez v. Barnhart*, 415 F.3d 457, 465 (5th Cir. 2005) (quoting *Frank v. Barnhart*, 326 F.3d 618, 619 (5th Cir. 2003)).  Rather, "*Watson* requires a situation in which, by its nature, the claimant's physical ailment waxes and wanes in its manifestation of disabling symptoms." *Perez*, 415 F.3d at 465. And the claimant's evidence must be "such that his ability to maintain employment was not adequately taken into account in his RFC [residual functional capacity] determination." *Id.* at 464–65. A witness' testimony that a claimant had "good days and bad days," and that the claimant's pain varies in intensity or "wax[es] and wane[s] between epidural injections," does not meet the requisite standard. *Id.* at 465–66 ("Such . . . assertions [are] simply not sufficient to bring [a claimant's] case within the [envisioned] realm of disablement. . . . It is axiomatic that the pain

from any type of ailment will vary in intensity, especially the farther one gets from the treatment that alleviates the pain."). Jones, like the claimant in *Perez*, has not made the necessary showing.

*Epps* and *Newton* also are materially distinguishable. In *Epps*, the Secretary's decision regarding Epps' ability to engage in substantial gainful employment was not supported by substantial evidence because it did not properly take into consideration the significant interruptions that the treatment regimen required for Epps' back injury—traction three or four times *daily* to alleviate pain—would have on a normal, eight-hour work day. 624 F.2d at 1273. And, in *Newton*, the ALJ was to consider, on remand, the effect of Newton's frequent doctor and hospital visits during the relevant period, as well as evidence that her illness and on-going treatment occasionally caused her to sleep for several hours during the day, on her ability to remain gainfully employed during the period of claimed disability. 209 F.3d at 459. Unlike the claimants in *Epps* and *Newton*, Jones has not shown that his treatment requirements adversely affected his ability to work on a sustained basis. *See* SSR 96-8p, 1996 WL 374184, at *5 ("RFC is an assessment of an individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis," that is, "8 hours a day, for 5 days a week, or an equivalent work schedule."); *see also* 20 C.F.R. §§ 404.1545, 416.945 (determine residual functional capacity for work activity on a regular and continuing basis).

Jones emphasizes the vocational expert's testimony, during the August 5, 2021 hearing, that having to miss all or part of a workday 38 times over a 20-month period, "in addition to ordinary absences due to illness," would have prevented Jones from sustaining each of the jobs on which the ALJ relied in concluding that there are jobs existing in the national economy that Jones could perform. Pointing to his physical therapy appointments,

Jones asserts that he would have had to miss all or part of a workday at least 38 times over 20 months since his disability onset date.

But, Jones, who bears the burden of proof, has not shown this to actually be true. As both the district judge and magistrate judge concluded, nothing in the administrative record demonstrates how much work time, if any, that Jones *necessarily* would have missed in order to attend 2–3 physical therapy appointments per week. The same is true of Jones' other medical appointments and even the shoulder surgery Jones underwent on June 29, 2020. Finally, whereas Jones' medical records reflect that he ultimately may undergo back and neck surgery, the mere possibility of surgery at some undetermined future time does not automatically render him presently incapable of sustained employment. Accordingly, the ALJ's assessment of Jones' residual functional capacity and ability to do "other work" is supported by substantial evidence and utilized proper legal standards.

## IV.

Having determined that the Commissioner's decision utilized proper legal standards and is supported by substantial evidence, the judgment of the district court is AFFIRMED.